LA SUCESIÓN DE FRANCISCO MARÍA FRANCESCHI, ETC., recurrente, v. EL REGISTRADOR DE LA PROPIEDAD DE PONCE, recurrido.

No. 768.—*Sometido:* Mayo 27, 1929. *Resuelto:* Junio 18, 1929.

*López de Tord & Zayas Pizarro,* abogados de la recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Según resulta de los autos en este recurso Pedro Pérez Santiago hipotecó a favor del Federal Land Bank of Baltimore cinco fincas rústicas de su propiedad; y luego por escritura otorgada en 16 de Noviembre de 1928, constituyó una segunda hipoteca sobre las mismas a favor del portador, o portadores, de cinco vales u obligaciones suscritas por Pérez Santiago. Esta hipoteca fué inscrita en el Registro de la Propiedad de Ponce.

Ante la Corte de Distrito de Ponce se inició un pleito, por la Sucesión de Don Francisco María Franceschi contra Don Pedro Pérez Santiago, sobre cobro de pagarés; y en ese litigio la parte demandante solicitó aseguramiento de sentencia, y el Márshal embargó diferentes bienes, entre ellos los cinco vales hipotecarios a que antes nos referimos, librándose el mandamiento para notificación al demandado. Se presentó al registro un mandamiento para anotar el embargo, y el registrador practicó la anotación; y en cuanto a la hipoteca para garantizar los vales al portador, aclaró que la anotación se tomaba sin perjuicio de tercero.

Contra esta nota se ha establecido el presente recurso para la modificación de la anotación, y revocación en cuanto a que se hizo sin perjuicio de tercero en lo que afecta a los vales.

Las partes recurrente y recurrida han presentado sus alegatos.

La recurrente sostiene que la nota puesta, por cuanto incluye la fórmula "sin perjuicio de tercero," en este caso equivale a una denegación de inscripción; que en la fecha en que se hizo la anotación no existía tercero, porque la presunción es la de que los vales se hallan en poder del propio deudor que otorgó la escritura de hipoteca y suscribió y otorgó los vales; y que el registrador no aplicó los artículos 142 y 143 de la Ley Hipotecaria, por virtud de los que, para

que exista un tercero poseedor de los vales, la negociación o entrega de éstos debe hacerse constar en el registro por nota marginal.

El registrador sostiene que éste no es un caso propio de recurso gubernativo, porque no se refiere a la calificación, denegación, o declaración de defecto subsanable; que en este caso no ha habido ni notificación de la nota, porque el mismo interesado redactó y firmó la notificación, sin intervención del registrador; que el mismo día de otorgamiento de la antes citada escritura de segunda hipoteca, se presentaron en el registro de la propiedad, para su inscripción, la copia de la escritura y los cinco vales, haciéndose la inscripción de éstos a favor de los portadores; que en seis de abril último y por medio de escritura otorgada el cinco del mismo mes ante el Notario Sr. Zapater se hizo constar que Don Mario Mercado era tenedor de los vales números dos, tres y cuatro, y Don Heraclio Cirón de los números uno y cinco; y de esa escritura se tomó razón en el Registro; que el mandamiento de embargo en el caso presente se había expedido en 27 de Marzo de 1929, y se cumplimentó por el márshal el mismo día, fecha en que también se presentó en el Registro, haciéndose la anotación en cuanto a los vales sin perjuicio de tercero; que en 8 de Mayo de 1929 el abogado de los demandantes, Sucesión Franceschi, recogió el mandamiento de embargo, y por sí extendió una notificación, sin el asentimiento del Registrador, quien no la firmó. Discute la admisibilidad del recurso, y en contra de ella cita jurisprudencia de Puerto Rico, y de España; y discute los fundamentos del recurso.

La teoría en que se funda el recurrente, si la entendemos bien, es que en las hipotecas para garantizar obligaciones transmisibles por endoso y obligaciones al portador, no es una hipoteca real y verdadera hasta que llega el momento en que las obligaciones garantizadas son transmitidas, por el endoso o por la entrega, y sólo entonces se ha consumado el préstamo; que así considerada, esa hipoteca tiene la misma condición

que la que garantiza una obligación futura, o sujeta a condición suspensiva, y le son de aplicación los artículos 142 y 143 de la Ley Hipotecaria, que preceptúan que la hipoteca en esos casos surtirá efecto contra tercero, desde su inscripción, si la obligación llega a contraerse o la condición llega a cumplirse, y en estos casos debe hacerse constar la circunstancia por nota marginal.

El apelante cita a los tratadistas Aragonés, Morell y Galindo y Escosura. Pero hemos de declarar que en alguna de esas citas se ha dejado por copiar un final importantísimo, que traeremos a esta opinión.

Podemos estar conformes con la doctrina de Aragonés, en cuanto a que la hipoteca para garantizar cuentas corrientes de crédito sea una que se refiere a obligaciones futuras, ya que la cuenta corriente, mientras lo es, mientras se halla en movimiento, no tiene en sí más que el germen de una obligación, que se determinará y fijará en un futuro más o menos remoto. Pero no convenimos en que tengan ese mismo carácter las que garantizan obligaciones endosables, o al portador; que en éstas la obligación existe desde un principio, la cantidad se halla determinada, la exigibilidad resuelta, y sólo *el nombre especial* del acreedor es variable, pero está fijo el nombre genérico de tal acreedor, endosatario, o portador. La hipoteca ha nacido desde el momento del otorgamiento de la escritura, y no ha de esperarse a que el nombre del acreedor se especifique y singularice, ya que en género está determinado.

Del mismo modo puede contestarse la teoría de Galindo y Escosura en lo que se crea aplicable a esta clase de hipotecas.

En cuanto a Morell, debemos decir que en la cita no se incluye un párrafo que es así:

"¿Quiere esto decir, como también se afirma por algunos escritores, que en el intervalo que media desde que la hipoteca se inscribe, hasta que los títulos circulan y se adquieren por terceras personas, exista una verdadera hipoteca a favor del mismo propietario,

puesto que vive y aún no hay otros acreedores? No tal. La ley no exige nota que acredite la circulación, ni mucho menos, porque no sería posible, la que aún sería más esencial, acreditativa de la existencia de terceros tenedores o adquirentes de todas las obligaciones emitidas, sino que desde luego y para cuando esos hechos se realicen, considera eficaz la hipoteca inscrita. Dispensa un requisito, pero nada más, atendiendo a la naturaleza de la obligación asegurada, como prescinde de la aceptación, y de toda escritura e inscripción en la transmisión de los títulos. En nuestro derecho, deudor y acreedor no pueden ser una misma persona, y el propietario de una finca no puede tener sobre ella hipoteca a su favor. Confundidos en una sola entidad los derechos y las obligaciones, la hipoteca existirá inscrita, pero por nadie puede hacerse efectiva, hasta que mediante la entrega del valor de pocos, muchos o todos los títulos, existan terceros, y con ellos créditos exigibles y acreedor. Mientras los expresados títulos sigan en poder del que aspira a ser deudor, como aún nada debe, nada puede exigírsele, ni nada puede exigirse por él, y la hipoteca a nadie puede beneficiar.'' (Morell, Legislación Hipotecaria, tomo 4, pág. 260.)

Copiamos este párrafo, por lo que se refiere a la primera parte, que niega la existencia de la hipoteca a favor del mismo propietario, y en cuanto confirma que la ley no exige nota registral que acredite la circulación, extremos en en que convenimos. En el resto parece existir alguna contradicción; pero creemos que el autor tiene en mente las emisiones de obligaciones de algunas compañías industriales, en las que puede suceder que la compañía reserve las obligaciones para lanzarlas al mercado más tarde; y quizá hay alguna confusión entre la propia existencia de la hipoteca y la exigibilidad de la misma. El gravamen hipotecario quedó constituido desde que se otorgó e inscribió la hipoteca, y desde ese momento existen: un deudor conocido y especificado; un acreedor o acreedores genéricos, no importa el nombre y sí sólo el carácter de endosatarios o de tenedores; una obligación determinada, y una garantía de la misma clase.

La Ley Hipotecaria española de 1861, no admitía la hipoteca para obligaciones endosables, o al portador. Declárase en ese sentido el legislador en la Exposición de motivos

de tal ley. Sería hacer muy larga la cita, hacer aquí la de todos los párrafos que de esta materia tratan. Baste uno de ellos, que dice:

"Desechado el sistema del endoso la Comisión sólo tenía que aplicar para la enajenación o cesión de los créditos hipotecarios las mismas reglas que dominan en todo el proyecto: que la transferencia del crédito hipotecario se haga por escritura pública para evitar los fraudes a que puedan dar lugar los documentos privados . . ."

Pero en la reforma de 1869, ya la necesidad había impuesto un cambio de sistema. La hipoteca para garantizar obligaciones al portador, y las transferibles por endoso se imponía en la vida práctica, y la ley tenía que cubrir ese pacto. En la Exposición a las Cortes encontramos el siguiente párrafo:

"XV. Con el objeto también de facilitar el crédito territorial, se propone en la nueva ley la reforma del artículo 153 de la ley de 1861, en el que se establece que únicamente por escritura pública pueda enajenarse o cederse el crédito hipotecario. Aunque son de mucha fuerza las razones que sirvieron de fundamento al citado artículo, en la actualidad es indispensable su reforma, ya porque algunas sociedades de crédito han hecho uso del hipotecario para emitir obligaciones trasmisibles por endoso, ya porque se ha autorizado a los concesionarios de los ferrocarriles para la emisión de títulos al portador garantizados con hipoteca, y ya, en fin, porque algunos grandes propietarios han principiado a utilizar el crédito territorial, emitiendo obligaciones hipotecarias endosables y amortizables a largos plazos. Si para la circulación de las referidas obligaciones fuese precisa la escritura pública, como lo es para constituir la hipoteca, el derecho hipotecario sería ilusorio en algunos casos porque no fuera posible otorgarse dicho documento, y en otros porque se negaran a ellos los interesados por los gastos que había de ocasionarles. Para el objeto de la ley hipotecaria, para el crédito territorial, lo esencial es que el Registro dé a conocer las fincas gravadas y el importe de los gravámenes, sin que sea absolutamente necesario que se designen las personas que tienen derecho a exigir el cumplimiento de la obligación garantizada, lo cual se acreditará en los Tribunales de justicia cuando sea oportuno. Pero la reforma del citado artículo exige la adopción de algunas medidas que se proponen en la nueva ley para que las hipotecas de que se trata no puedan cancelarse perjudicándose a los interesados en ellas, ya que no son conocidos por el Registro." Alcubilla, tomo 5, pág. 652.

Por la legislación se aprecia el desarrollo de la práctica de otorgar garantías hipotecarias a favor de obligaciones endosables y transferibles por la tradición. Y así encontramos el Real Decreto de 24 de Julio de 1875 referente al Banco Hipotecario de España, y el Código de Comercio de 1885, que da a las compañías de crédito territorial la facultad de omitir obligaciones y cédulas hipotecarias (Artículo 199, 201, 206, 207 y 208, Código citado).

La Ley Hipotecaria de España, después de la reforma de 1869, contiene en su artículo 153 la siguiente adición:

"Artículo 153.—  *  *  *

"Si la hipoteca se ha constituido para garantizar obligaciones transferibles por endoso o títulos al portador, el derecho hipotecario se entenderá transferido con la obligación o con el título, sin necesidad de dar de ello conocimiento al deudor, ni de hacerse constar la transferencia en el registro."

Y en la Ley Hipotecaria para Cuba, Puerto Rico y Filipinas, el artículo 161, tiene un párrafo igual al antes transcrito. Y esencialmente ese párrafo es el artículo 153 de nuestra Ley Hipotecaria.

Aceptado francamente el sistema de la garantía hipotecaria en cuanto a obligaciones al portador y obligaciones endosables, las consecuencias de la propia naturaleza de las así garantizadas se reflejan en el registro. Sería inutilizar el carácter de movilidad del crédito, exigir la inscripción o anotación de las transferencias de tal garantía. Y a evitar ese mal responde el inciso de esos artículos que dice:

" . . . sin necesidad de dar de ello conocimiento al deudor, *ni de hacerse constar la transferencia en el registro*" (itálicas nuestras).

La Ley No. 33 de 1912, de Puerto Rico, reproduce al mismo concepto.

No se trata, pues, de obligaciones en que intervenga condición, y a las que sean aplicables los preceptos de ley que cita el apelante. Hay un tercero, el portador, y un tercero

inscrito; y el registrador al anotar en la forma en que lo hizo procedió correctamente.

Una decisión de este tribunal, la del caso *Godreau* v. *Registrador,* 37 D.P.R. 659, trata esta misma materia, y la doctrina de la presente es conforme con aquélla.

El recurrido suscita la cuestión de improcedencia del recurso, por no tratarse de una nota denegatoria o de defecto subsanable. No podemos estar de acuerdo con la extremadamente técnica interpretación que de la ley hace el registrador. Si la nota envuelve una práctica denegación de inscripción, cabe el recurso contra ella. La ley ha querido crear un remedio, no una exclusión.

La nota objeto de este recurso *debe ser confirmada.*