Andrés Flores, recurrente, *v.* El Registrador de la Propiedad de San Germán, P. R., recurrido.

Núm. 1224.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Diciembre 9, 1947.

*José Rosario Gelpí,* abogado del recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El 25 de noviembre de 1937 Ernesto Flores Rodríguez y su esposa Amada Bulls constituyeron hipoteca, que se inscribió en el Registro de la Propiedad, sobre una finca urbana en garantía de dos pagarés al portador por $2,500 cada uno, a vencer el 25 de noviembre de 1939.

El 22 de junio de 1938 Amada Bulls falleció ab intestato y fueron declarados únicos y universales herederos de ella sus hijos Ana Nereida, Pedro Ernesto, Nora Catalina, Roberto, Elmo y Noé y el cónyuge supérstite en la cuota usufructuaria que determina la ley.

Por escritura núm. 14 de 19 de enero de 1947 Roberto Flores Bulls cedió a su padre Ernesto Flores Rodríguez sus derechos en la herencia de su madre Amada Bulls. En la inscripción de dicho documento se hizo constar lo siguiente:

" . . el citado Roberto Flores Bulls . . . cede, renuncia y traspasa, transfiere y trasmite, a título de venta, real y efectiva, a favor de Ernesto Flores Rodríguez, . . . *toda su participación hereditaria, esto es, todo el derecho, acción, participación, título e interés que*

*tiene y pueda tener* y le corresponda y pueda corresponderle *en toda clase de bienes dejados a su muerte* por su finada madre Doña Amada Bulls Irizarry, ya sean bienes inmuebles o raíces, muebles, semovientes, frutos y cosechas, créditos hipotecarios . . . *dejados por la causante a su fallecimiento, . . . "* (Bastardillas nuestras.)

Posteriormente, por escritura de 15 de marzo de 1947, ante el notario José Rosario Gelpí Bosch, los herederos Ana Nereida, Noé, Nora y Elmo Flores Bulls vendieron a su padre sus derechos y acciones sobre la citada finca urbana. En la inscripción de dicho documento se consignó:

"Angel Morales . . . en su carácter de apoderado de Noé Flores Bulls, . . . ; Nora Flores Bulls, . . . ; Nereida Flores Bulls, . . . ; Elmo Flores Bulls, . . . venden a favor de Ernesto Flores Rodríguez, . . . *todos los derechos y acciones, participación y condominios que los citados vendedores tienen sobre la finca de este número . . . "* (Bastardillas nuestras.)

Dueño así de su mitad de gananciales y de cinco sextas partes de la otra mitad de la finca, el citado Ernesto Flores Rodríguez, por escritura de igual fecha, ante el mismo notario, procedió a cancelar la referida hipoteca consignando en la escritura lo siguiente:

"CUARTO: Hace constar el Sr. Flores Rodríguez que nunca dichos vales hipotecarios fueron cedidos, endosados, ni traspasados a persona alguna, habiéndolos conservado siempre en su poder y deseando cancelar los mismos a los efectos de que se cancele totalmente la hipoteca que figura inscrita en el Registro de la Propiedad y a la que se ha hecho referencia, procede a cancelar y cancela dicha hipoteca y al efecto entrega al notario autorizante ambos vales hipotecarios y éste a presencia del otorgante y de los testigos inutiliza los mismos tachando los nombres de los deudores y poniendo a través de la cara impresa de ambos vales la palabra 'Cancelado' queriendo y consintiendo el otorgante, que por el Registrador de la Propiedad de San Germán se haga la cancelación total del referido crédito hipotecario."

El mismo día y ante el mismo notario, Ernesto Flores Rodríguez, asistido de su esposa Teresa Cruz Vega, por sí y como apoderado de su hijo Pedro Ernesto Flores Bulls,

vendió la finca a Andrés Flores por el precio de $12,000, expresándose que de dicha suma correspondían $1,000 a Pedro Ernesto Flores Bulls. Se consignó, además, que la venta incluía el derecho de usufructo vidual que correspondió a Ernesto Flores Rodríguez.

Presentadas en el Registro las dos escrituras últimamente mencionadas, se inscribió la de compraventa a favor de Andrés Flores, consignándose al calce de dicha escritura que la finca se hallaba afecta a la citada hipoteca; y en cuanto a la de cancelación, se denegó la inscripción por los motivos expuestos en la nota recurrida, a saber:

"DENEGADA la cancelación a que se contrae el precedente documento por observarse que según consta de su correspondiente inscripción en el Registro, la hipoteca cuya cancelación se solicita garantiza dos pagarés, ambos transferibles por endoso(¹) sin que se haya acreditado que dichos pagarés hayan sido endosados o transferidos en forma legal a favor del compareciente Ernesto Flores Rodríguez quien los suscribió siendo casado con su primera esposa Amada Bulls, sin que hayan consentido en dicha cancelación los causahabientes o herederos de la mencionada Amada Bulls, tomando en su lugar anotación preventiva por el término legal a favor del mencionado Ernesto Flores Rodríguez, al folio 201 del tomo 62 de Cabo Rojo, finca número 2496 por nota al margen de su inscripción 4a. San Germán a 16 de septiembre de 1947. (Fdo.) Juan Juan Toro, Registrador."

En la hipótesis de que los pagarés al portador, que nunca fueron puestos en circulación, representen algún crédito a favor de las personas que los expidieron o de sus herederos, nos enfrentaríamos con el hecho de que todos los herederos de Amada Bulls con excepción de Pedro Ernesto Flores Bulls,

(¹)El Registrador incurre en manifiesto error al calificar de "pagarés transmisibles por endoso" las obligaciones al portador que suscribieron Ernesto Flores Rodríguez y su esposa Amada Bulls. El pagaré trasmisible por endoso se expide a la orden de determinada persona, quien para trasmitir el crédito representado por el pagaré, necesita endosarlo. El pagaré al portador, como su nombre indica, no se expide a la orden de determinada persona y la mera tradición del documento trasmite el crédito sin que su tenedor necesite acreditar cómo lo adquirió.

al ceder o vender a Ernesto Flores Rodríguez todo el interés que pudieran tener en la referida finca, necesariametne trasmitieron cualquier derecho que hubieran podido tener en relación con dichos pagarés. Eliminados esos cinco herederos, las únicas personas con posible interés en dichas obligaciones al portador eran Ernesto Flores Rodríguez y su hijo Pedro Ernesto Flores Bulls.

Así simplificado el problema, la cuestión a resolver es si Ernesto Flores Rodríguez tenía facultad para cancelar los pagarés sin el concurso de Pedro Ernesto Flores Bulls.

El artículo 79 de la Ley Hipotecaria (según fué enmendado por la Ley núm. 18 de 9 de julio de 1936, tercera sesión extraordinaria, pág. 145), prescribe:

"Art. 79.—Podrá pedirse y deberá ordenarse en su caso, la cancelación total:

" "* * * * * * *

"2. Cuando se extinga también por completo el derecho inscrito; . . . . "

Y dice el artículo 132 del Reglamento para la Ejecución de la Ley Hipotecaria:

"Art. 132.—Se considerará extinguido el derecho real inscrito para los efectos del número 2 del mismo artículo 79:

" "* * * * * * *

"Segundo.—* * * * * * *

"En el caso previsto por el segundo apartado del Artículo 153([2]) de la Ley, cuando el derecho se extingue por voluntad del mismo deudor, siempre que no haya dispuesto de los títulos endosables o al portador o los haya readquirido por tradición o endoso de la persona a cuya orden fueron transferidos."

De conformidad con los preceptos legales citados, no habiendo dispuesto el deudor de los títulos al portador, puede

---

([2])El segundo apartado del artículo 153, según fué enmendado por la Ley núm. 33 de 7 de marzo de 1912, pág. 70, dice:

"Tales obligaciones podrán ser constituídas por el dueño de una finca o derecho, sin determinación específica del nombre del acreedor, otorgándolas genéricamente a la orden de la persona a cuyo favor puedan ser transferidos o endosados los títulos quirografarios por el hipotecante."

considerarse extinguido el derecho de hipoteca a voluntad del deudor y solicitar éste su cancelación. Esto nos lleva a considerar qué valor, si alguno, tenían para los dueños de la finca estas obligaciones al portador al ser canceladas por Ernesto Flores Rodríguez cerca de nueve años después de su vencimiento.

Discutiendo esta cuestión dice Morell:

" . . . En nuestro derecho, deudor y acreedor no pueden ser una misma persona, y el propietario de una finca no puede tener sobre ella hipoteca a su favor. Confundidos en una sola entidad los derechos y las obligaciones, la hipoteca existirá inscrita, pero por nadie puede hacerse efectiva, hasta que mediante la entrega del valor de pocos, muchos o todos los títulos, existan terceros, y con ellos créditos exigibles y acreedor. Mientras los expresados títulos sigan en poder del que aspira a ser deudor, como aún nada debe, nada puede exigírsele, ni nada puede exigirse por él, y la hipoteca a nadie puede beneficiar." Comentarios a la Legislación Hipotecaria, t. 4 (2da. ed. 1930) págs. 270-1.

Tanto de acuerdo con nuestra Ley Hipotecaria que considera extinguida la hipoteca a voluntad del deudor cuando los pagarés, ya sean al portador o trasmisibles por endoso, no han sido puestos en circulación, como bajo la teoría expuesta por Morell, el resultado a que hemos de llegar en el presente caso será el mismo: Que los pagarés ningún valor representan para los dueños de la finca, y por consiguiente, la cancelación de la hipoteca a nadie puede perjudicar. Por el contrario, beneficiaba a los condueños eliminar el gravamen aparente que existía en el Registro, para de ese modo vender la finca libre del mismo. Siendo ello así, cualquiera de los condueños que tuviese en su poder los pagarés en cuestión podía concurrir ante un notario y dando cumplimiento al artículo 82, último apartado, de la Ley Hipotecaria (según fué enmendado por la Ley núm. 22 de 7 de julio de 1923, pág. 219), otorgar la correspondiente escritura de cancelación.

*Procede la revocación de la nota recurrida y ordenar la inscripción de la cancelación.*