SECRETARIO DE HACIENDA DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. FAUSTO RAMOS QUIRÓS, JUEZ, demandado.

*Número:* C-66-52        *Resuelto:* 22 de noviembre de 1967

438

*J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados del peticionario; *Dubón & Dubón* y *A. Torres Braschi,* abogados de la interventora Aida Padilla de Abella, en su carácter de tutora de su esposo Frank Abella Hernández; *Edelmiro Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados de María del Carmen Saló Vda. de Seraballs, interventora.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

█ Concluimos que un pagaré hipotecario librado a la orden de determinada persona, pagadero a la presentación, y la hipoteca que lo garantiza, no pierden su valor y eficacia, como concluyó el tribunal de instancia, por confusión de derechos al endosarse el instrumento negociable a su librador, en vista de que éste lo volvió a poner en circulación al darlo en prenda al Secretario de Hacienda, no obstante que con posterioridad a su libramiento y a la inscripción de la hipoteca pero con anterioridad a la prenda del pagaré se embargó el inmueble así gravado en aseguramiento de sentencia en acción de daños y perjuicios en contra del librador, y que dicho inmueble fue subsiguientemente adjudicado al embargante que fue favorecido por dicha sentencia.

En 29 de mayo de 1961, los esposos Frank Abella Hernández y Aida Padilla de Abella, ante notario público, constituyeron una hipoteca sobre un inmueble de su propiedad para garantizar un pagaré hipotecario por la suma de $25,000, vencedero a la presentación, expedido a favor de Juan Hernández Ruiz, o a su orden. Dicha hipoteca fue inscrita en el Registro de la Propiedad el 7 de junio de 1961.

Las aquí interventoras, María Saló y María del Carmen Seraballs Saló, incoaron acción de daños y perjuicios contra Frank Abella Hernández y a los efectos de asegurar la efectividad de la sentencia que en su día se dictare embargaron el referido inmueble. El mandamiento de embargo se presentó en el Registro de la Propiedad el 15 de diciembre de 1961 y fue anotado el 20 de febrero de 1964.

El 16 de marzo de 1964, Hernández Ruiz endosó dicho pagaré a Abella Hernández o a su orden y ese mismo día éste lo endosó a favor del Secretario de Hacienda o a su orden. En 21 de abril de 1965 Abella Hernández suscribió un contrato de prenda del referido pagaré a favor de dicho funcionario para garantizar el pago de contribuciones sobre ingresos que adeudaba.

En 17 de diciembre de 1965, las interventoras embargaron el aludido pagaré el cual, para esa fecha, estaba en poder del Secretario de Hacienda.

En ejecución de la sentencia en la acción de daños y perjuicios, [1] en 20 de enero de 1966 se vendió en pública subasta el inmueble hipotecado, adjudicándose a las interventoras por la suma de $30,000.

En 4 de marzo de 1966 se solicitó del Tribunal Superior, Sala de San Juan, que se ordenara la cancelación de la aludida hipoteca. El Secretario de Hacienda fue citado y se opuso a la solicitud de las interventoras. Dicho tribunal dictó resolución en 25 de marzo de 1966 ordenando al Regis-

---

[1] La cual confirmamos en *Vda. de Seraballs* v. *Abella Hernández*, 90 D.P.R. 368 (1964).

trador de la Propiedad de San Juan que cancelara la inscripción de la hipoteca. El demandado Abella Hernández radicó una moción de reconsideración—de la anterior resolución—la cual fue declarada sin lugar.

En la mencionada resolución, el tribunal de instancia concluyó que:

"Aunque la anotación en el Registro del embargo de la demandante quedó sujeto a la hipoteca que el demandado tenía constituida a favor del tenedor del pagaré por $25,000.00 emitido el 29 de mayo de 1961, evidentemente la devolución y entrega del pagaré al demandado posteriormente por su tenedor original Juan Hernández Ruiz colocó a la demandante como acreedora del demandado en posición de preferencia sobre cualquier futuro adquirente de dicho pagaré en vista de que como dueño de la finca y tenedor a la vez de la obligación para cuya garantía se había constituido la hipoteca, tanto el pagaré como la última perdieron su valor y eficacia legal respecto a la demandante por haberse confundido en el demandado mismo la condición de deudor y acreedor de la obligación evidenciada por el pagaré.

Por consiguiente, para la fecha de abril 21 de 1965 en que recibió de manos del demandado y tomó en prenda el pagaré de que se trata, el Secretario de Hacienda tenía conocimiento por el Registro de que la propiedad que garantizaba hipotecariamente dicho pagaré estaba sujeta preferentemente al embargo anotado a favor de las demandantes que adquirieron, a virtud de dicho embargo y subsiguiente adjudicación en subasta de la propiedad el derecho a que se cancele en el Registro la inscripción de hipoteca que garantizaba el pagaré. Véase *Banco de Puerto Rico* v. *Solá e hijos*, 26 D.P.R. 63; *Vicenty* v. *Vázquez*, 11 D.P.R. 287 y *Schlüter* v. *Sucn. Díaz*, 46 D.P.R. 636."

El Secretario de Hacienda, peticionario, imputa al tribunal de instancia la comisión de los siguientes errores:

"1.—. . . al resolver que tanto el pagaré como la hipoteca perdieron su valor y eficacia legal por haberse confundido en el demandado la *condición de deudor y acreedor de la obligación* evidenciada por el pagaré.

2.—. . . al aplicar al caso los principios del Derecho Civil relativos a la confusión de los derechos de acreedor y deudor.

3.—. . . al resolver que la devolución y entrega del pagaré al demandado por su tenedor original colocó a la demandante en posición de preferencia sobre cualquier futuro adquirente de dicho pagaré.

4.—. . . al resolver que procede la cancelación de la inscripción de la hipoteca constituida por el demandado . . . y al ordenar al Registrador de la Propiedad que cancele dicha hipoteca."

Por estar íntimamente relacionados los errores señalados los discutiremos conjuntamente.

■ El Art. 153 de la Ley Hipotecaria (30 L.P.R.A. sec. 266) en vigor autoriza las hipotecas constituidas en garantía de obligaciones transferibles por endoso, como el pagaré en este caso, o de títulos al portador.[2] *Rosario* v. *Registrador*, 89 D.P.R. 850 (1964). En los casos de hipotecas otorgadas en garantía de pagarés al portador o transferibles por endoso, el gravamen hipotecario queda constituido desde que se otorga e inscribe la hipoteca, y desde ese momento existen: un deudor conocido; un acreedor o acreedores genéricos, no importa el nombre y sí sólo el carácter de endosatarios o de tenedores; una obligación determinada y una garantía de la misma. *Sucesión Franceschi* v. *Registrador*, 39 D.P.R. 736, 740 (1929).

■ Una hipoteca puede extinguirse por la confusión de los derechos de acreedor y deudor. *Hau* v. *Registrador*, 58

---

[2] El Art. 153 de la Ley Hipotecaria dispone que:

"En la hipoteca constituida para garantir obligaciones transferibles por endóso o títulos al portador, cuando se enajene o ceda el derecho hipotecario, se entenderá éste transferido con la obligación o con el título, sin necesidad de dar de ello conocimiento al deudor ni de hacerse constar la transferencia en el Registro.

"Tales obligaciones podrán ser constituidas por el dueño de una finca o derecho, sin determinación específica del nombre del acreedor, otorgándolas genéricamente a la orden de la persona a cuyo favor puedan ser transferidos o endosados los títulos quirografarios por el hipotecante."

Véanse, además, los Arts. 132, 182, 183 y 184 del Reglamento Para La Ejecución De La Ley Hipotecaria (30 L.P.R.A. secs. 1032, 1116, 1117 y 1118). *Godreau* v. *Registrador*, 37 D.P.R. 659, 663 (1928).

D.P.R. 805 (1941). Y que de conformidad con el Art. 78 de la Ley Hipotecaria y el Art. 132 de su Reglamento, cuando un deudor no ha dispuesto de los títulos al portador garantizados con hipoteca puede considerarse extinguido el derecho de hipoteca *a voluntad del deudor* y solicitar éste su cancelación. *Flores* v. *Registrador*, 67 D.P.R. 882, 885–886 (1947).

■ Por otra parte, el pagaré que nos ocupa es un instrumento negociable y por lo tanto se rige por las disposiciones de la Ley Uniforme de Instrumentos Negociables. *París* v. *Canety*, 73 D.P.R. 403 (1952). En Art. 472 del Código de Comercio (19 L.P.R.A. sec. 201), dispone que un instrumento negociable queda cancelado, entre otras circunstancias, cuando el deudor principal llegue a ser dueño del mismo al vencimiento o después del vencimiento por propio derecho. Esta disposición no es aplicable al caso ante nos pues (1) cuando el pagaré en cuestión volvió a manos del deudor principal y éste lo endosó en prenda al Secretario de Hacienda, sin que aparezca que dicho endoso se hizo después del vencimiento del pagaré, se presume que su transmisión al Secretario de Hacienda se hizo antes del vencimiento (Art. 398 del Código de Comercio—19 L.P.R.A. sec. 76); (2) como la obligación era pagadera a la presentación, su vencimiento sólo podía ocurrir cuando el tenedor exigiese el pago de la obligación, circunstancia que no se comprobó ocurriese antes del endoso al Secretario de Hacienda (Arts. 398 y 360 del Código de Comercio—19 L.P.R.A. secs. 76 y 8); y (3) el propósito de dicha disposición es proteger a las partes concernidas en el instrumento y no a un extraño al mismo como lo era la embargante en este caso. *State Finance Co.* v. *Moore*, 174 Pac. 22 (Wash. 1918).

El Art. 403 de dicho código (19 L.P.R.A. sec. 81), provee que cuando un instrumento negociable vuelva, en virtud de negociación, a una persona que ha tenido interés en el mismo ésta podrá rexpedirlo y, además, negociarlo. *Citizens Nat.*

*Bank* v. *Loranger*, 113 So. 129 (La. 1927). Cuando el deudor principal, luego de readquirir el pagaré en cuestión lo endosó y lo dio en prenda al Secretario de Hacienda, en efecto lo negoció, lo puso en circulación y en tal virtud recobró el instrumento toda su fuerza y vigor. *Vendrell* v. *Torres Aguiló*, 85 D.P.R. 873 (1962).

La confusión de los derechos de acreedor y deudor necesariamente no es de carácter permanente, de manera que cuando ocurre, bajo circunstancias como la de este caso, los derechos de las partes no han de ser afectados definitivamente y para siempre. En *Perocier* v. *Registrador*, 47 D.P.R. 165 (1934), indicamos que determinadas circunstancias pueden dar lugar a que una hipoteca cancelada por confusión de derechos sea revivida al anularse la operación que dio lugar a la confusión de derechos.

■ Es doctrina generalmente aceptada que la confusión de derechos puede ser de carácter temporal de manera que cuando cese o se revoque la confusión, deben cesar los efectos extintivos que supone y, en consecuencia, la obligación cancelada por razón de la confusión renace en los mismos términos y forma en que se hallaba al ocurrir dicha confusión. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo 1, Vol. II, págs. 371 a 375; Puig Peña, *Tratado de Derecho Civil Español*, Tomo 4, Vol. 1 (1951), pág. 337; Manresa, *Comentario al Código Civil Español*, 5ta. ed. (1950), Tomo VIII, Vol. 1, pág. 698; Ignacio de Casso, *Derecho Hipotecario o del Registro de la Propiedad*, 4ta. ed. 1951, págs. 710–723.

En *Arroyo* v. *Registrador*, 86 D.P.R. 362, 374 (1962) dijimos que la Ley Hipotecaria debe interpretarse "en forma que facilite y no entorpezca las transacciones con más atención a su sustancia que a los detalles teóricos, y teniendo en mente como principio que al Registro de la Propiedad se acude a buscar protección y no perjuicio."

■ Como en este caso se trata de un instrumento negociable pagadero a la presentación de manera que su vigencia

y eficacia no se pierde cuando en el curso de su circulación en el mercado retorna a su librador y éste lo vuelve a negociar, concluimos que la hipoteca otorgada para garantizarlo tampoco queda anulada por la temporera tenencia de la obligación principal en manos de su librador. Por lo tanto, no procedía la cancelación de su inscripción en el Registro.

■ Si bien es verdad que mientras el librador retuvo el pagaré la efectividad del mismo estuvo en suspenso, y en tal virtud la hipoteca que lo garantiza quedó temporalmente latente, tan pronto como se volvió a poner el pagaré en circulación (en este caso tan pronto como lo endosó y pignoró con el Secretario de Hacienda) tanto la vigencia y efectividad del pagaré, como la de la hipoteca que lo garantiza, renacieron en los mismos términos y forma en que se encontraban cuando el librador readquirió dicho pagaré. Al readquirirlo el librador, la situación jurídica es idéntica a la que se obtiene cuando una persona suscribe un pagaré al portador y a la presentación, lo garantiza con hipoteca sobre un inmueble de su propiedad y retiene el instrumento negociable por un tiempo y luego lo vende o lo pignora o en otra forma lo pone en circulación. Mientras retiene el pagaré, la vigencia y efectividad del mismo y la de su garantía permanecen latente, pero tan pronto se transfiere la tenencia del instrumento, entran en toda su fuerza y vigor los derechos que emanan del instrumento y de su garantía, *desde* la fecha misma en que se libró el primero y se presentó para inscripción en el Registro de la Propiedad la segunda.

Las disposiciones de la Ley de Instrumentos Negociables y la Ley Hipotecaria y la naturaleza misma de los valores en cuestión exigen la conclusión a que hemos llegado a los fines de que lo dispuesto en el Art. 403 del Código de Comercio y el Art. 153 de la Ley Hipotecaria surtan su debido efecto y no se conviertan en letra muerta o inefectiva y que, por el contrario, en virtud de las mismas continúe inalterada

y no restringida o menguada la circulación de valores negociables en el mercado, tráfico esencial en toda economía en pleno desarrollo. Siendo la referida hipoteca un gravamen anterior en su inscripción al embargo que dio causa a este recurso, no puede prevalecer dicho embargo sobre aquélla.

En tal virtud, *(1) se deja sin efecto la resolución del tribunal de instancia de 25 de marzo de 1966; (2) se anula la cancelación de la hipoteca efectuada por el Registrador de la Propiedad de San Juan, Sección Primera, en 18 de mayo de 1966; (3) se determina que dicha hipoteca subsiste en toda su fuerza y vigor; (4) se resuelve que la acreedora embargante adquirió el inmueble en cuestión sujeto al referido gravamen hipotecario; y (5) se devuelve el caso al tribunal de instancia para que se proceda de acuerdo con los términos de este dictamen.*

El Juez Asociado Señor Blanco Lugo concurre con el resultado.