EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| R&G Premier Bank of Puerto Rico<br><br>    Recurrente<br><br>         v.<br><br>Hon. Sandra Valentín<br>Registradora de la Propiedad,<br>Sección Tercera de San Juan<br><br>    Recurrida | Recurso Gubernativo<br><br>2004 TSPR 128<br><br>162 DPR ____ |

Número del Caso: RG-2004-1

Fecha: 22 de julio de 2004

Abogados de la Parte Recurrente:

                    Lcdo. Armando J. Martínez Vilella
                    Lcdo. Georgette M. Rodríguez Figueroa

Abogada de la Parte Recurrida:

                    Por Derecho Propio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R&G Premier Bank of Puerto Rico

    Recurrente

        v.

                        RG-2004-001

Hon. Sandra Valentín
Registradora de la Propiedad,
Sección Tercera de San Juan

    Recurrida

Opinión del Tribunal emitida por la Jueza Presidenta señora NAVEIRA MERLY

En San Juan, Puerto Rico, a 22 de julio de 2004

Nos corresponde determinar si procede la cancelación en el Registro de la Propiedad, por confusión de derechos, de un pagaré hipotecario, no vencido, librado a la orden de determinada persona, en vista de que se encuentra en manos de su librador y éste no lo ha puesto nuevamente en circulación.

I

Los hechos medulares no están en controversia. El 21 de julio de 1993 los esposos Samuel Santos Vega y Zulma Raíces Berríos (en adelante el matrimonio Santos Raíces) emitieron un pagaré

hipotecario a favor del Banco Bilbao Vizcaya o a su orden, por quinientos mil dólares ($500,000), vencedero el 1 de agosto de 2008, cuyo pago garantizaron con primera hipoteca sobre un inmueble de 1,403.59 m/c radicado en el Reparto San Francisco, Sector Monacillos de Río Piedras, Puerto Rico. Esta operación fue debidamente inscrita en el Registro de la Propiedad (en adelante Registro), Sección Tercera de San Juan.

Años mas tarde, específicamente el 23 de noviembre de 2002, el matrimonio Santos Raíces constituyó una segunda hipoteca sobre el referido inmueble para garantizar un pagaré hipotecario de novecientos mil dólares ($900,000) expedido a favor de R&G Premier Bank of Puerto Rico (en adelante R&G), o a su orden. En esa misma fecha, y habiendo obtenido mediante endoso a su favor el pagare emitido a favor de Banco Bilbao Vizcaya, el matrimonio Santos Raíces otorgó una Escritura de Subordinación de Hipoteca, mediante la cual solicitaba de la Registradora de la Propiedad, de la Sección Tercera de San Juan, Hon. Sandra Valentín (en adelante la Registradora), que permutase el rango de la hipoteca en garantía del pagaré que tenía en su posesión a favor de la hipoteca constituida en garantía del pagaré a favor de R&G o a su orden. Oportunamente, la mencionada

escritura fue presentada ante el Registro para su debida calificación.[1]

Calificada la escritura, la Registradora notificó a los presentantes una (1) falta que impedía la inscripción, a saber: "a la subordinación no comparece el Banco Bilbao Vizcaya". Contra dicha notificación, R&G radicó escrito de recalificación alegando que no se contaba con el beneficio de las razones legales en las cuales la Registradora había apoyado su determinación. Conforme al Art. 69 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2272, *supra*, la Registradora emitió una segunda notificación, fundamentada en lo dispuesto en los Arts. 138 y 189 de la Ley Hipotecaria, 30 L.P.R.A. secs. 2608, 2462, y en los Arts. 166.1 y 125.2 del Reglamento Hipotecario, 30 L.P.R.A. secs. 870.604, 870.472, donde reiteraba su posición original de negarse a inscribir la escritura objeto del presente litigio. Insatisfecho, R&G radicó un segundo escrito de recalificación argumentando que nada de lo contenido en los citados artículos de la Ley y el Reglamento Hipotecario, *supra*, impedían que se permutase el rango de los pagarés hipotecarios en cuestión. No empece a dicho señalamiento, la Registradora ratificó la calificación original y extendió una anotación preventiva de denegatoria por las siguientes razones:

---

[1] Véase, asiento 217 del Diario de Presentación Núm. 646.

SE DENIEGA la inscripción observándose, que los que comparecen a posponer no son los acreedores hipotecarios tal y como requiere el Art. 189 de la Ley Hipotecaria, sino los deudores hipotecarios compareciendo ahora como tenedores del pagaré, resultando esto en una confusión de derechos. Por que está la figura del deudor y acreedor unidos.

Procediendo en su lugar la cancelación del pagaré que garantiza la hipoteca objeto de subordinación, la cual a [sic] de quedar extinguida de conformidad con el Art.130 de la Ley Hipotecaria y del Art. 125.2.

Inconforme, R&G Premier Bank acudió ante nos mediante recurso gubernativo. En esencia, planteó que en el presente caso no es de aplicación la doctrina de confusión de derechos, ello conforme a lo resuelto por este Tribunal en *Sec. de Hacienda v. Tribunal Superior*, 95 D.P.R. 436 (1967), y la secuela de casos que le citan, donde se estableció que no pierde su vigencia y eficacia un instrumento negociable pagadero a la presentación –garantizado por una hipoteca– cuando en el curso de circulación en el mercado retorna a su librador y éste lo vuelve a negociar, no procediendo la cancelación de la hipoteca otorgada en su garantía por la temporera tenencia de la obligación principal en manos de su deudor. Oportunamente, la Registradora sometió su alegato en oposición. Con el beneficio de las comparecencias de ambas partes, resolvemos.

II

El derecho de hipoteca se define como "un derecho real que... sujeta o vincula lo hipotecado, cualquiera

que sea titular, al poder de exigir eventualmente la realización de su valor así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de constitución registral, y grava bienes inmuebles, ajenos y enajenables, que permanecen en posesión del propietario o titular, y el cual implica un poderoso instrumento de crédito territorial. Roca Sastre, *Derecho Hipotecario*, Tomo IV, 8va. Edición, Barcelona, Ed. Bosch, 1998, págs. 113-114; Luis Rafael Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 2da. ed., San Juan, Jurídica Editores, 2002, pág. 481.

Así, pues, el contrato de hipoteca supone la existencia de dos (2) figuras jurídicas, a saber, una obligación principal, y la hipoteca en sí, que sirve de garantía al acreedor de la primera. No se concibe una hipoteca sin obligación garantizada. *Liechty v. Descartes*, 109 D.P.R. 496, 501-502 (1980). Este carácter accesorio explica que la hipoteca subsista efectivamente mientras el crédito que asegura tenga vida. Extinguido el crédito, se extingue la hipoteca; transmitido el crédito, se transmite la hipoteca; la nulidad o ineficacia del crédito, provoca la nulidad o ineficacia de la hipoteca. *Id.*

El derecho real de hipoteca se extingue en todo caso en que se extinga la obligación garantizada y

también por causas que solo se refieran a ella. Puede ser total o parcial; y si se atiende al origen, puede ser voluntaria o forzosa. Las causas de la extinción pueden ser de variada índole; unas se deben a la obligación garantizada (por razón de la accesoriedad de la hipoteca) y otras a la hipoteca propiamente (con independencia de que se extinga o subsista la obligación). En cuanto a las primeras, por aplicación del Art. 1110 del Código Civil, 31 L.P.R.A sec. 3151, la extinción ocurre en los siguientes supuestos: pago, pérdida, condenación, **<u>confusión</u>**, compensación y novación. También puede extinguirse la hipoteca por actos voluntarios, como es el caso de la renuncia de la hipoteca por parte del acreedor, por el acuerdo entre el acreedor y el propietario de la finca grabada. Rivera Rivera, *supra*, pág. 509.

Jurisprudencialmente hemos establecido una excepción a la regla de la confusión de derechos mediante la cual queda extinguida una obligación desde que se reúnen en una misma persona el acreedor y el deudor. **En la hipoteca en garantía de título al portador, cuando el librador del pagaré lo recupera, no se produce la cancelación del crédito por confusión de derechos <u>si éste opta por ponerlo nuevamente en circulación</u>**. *Calo v. Reyes*, 115 D.P.R. 123, 127 (1987); *FDIC v. Registrador,* 111 D.P.R. 602, 608 (1981); *Srio. de Hacienda v. Tribunal Superior*, 95 D.P.R. 436 (1967);

véase además, *Rivera Rivera, supra*, a la pág. 488. **Ello es así puesto que la confusión de los derechos de acreedor y deudor, en los casos de hipoteca en garantía de títulos trasmisibles por endoso o al portador, puede ser de carácter temporal de manera de que cuando cese o se revoque la confusión, deben cesar los efectos extintivos que supone y, en consecuencia, la obligación cancelada por razón de la confusión renace en los mismos términos y forma en que se hallaba al ocurrir dicha confusión**. *Srio. de Hacienda v. Tribunal Superior, supra,* a la pág. 443.

Específicamente, en el normativo *Srio. de Hacienda v. Tribunal Superior, supra,* en ocasión de evaluar las características inherentes de todo instrumento negociable como lo son los pagarés al portador, resolvimos que un pagaré hipotecario librado a la orden de determinada persona, pagadero a la presentación, y la hipoteca que lo garantizó no perdieron su valor y eficacia por confusión de derechos al endosarse el instrumento negociable a su librador quien lo retuvo por un tiempo breve –un día– y luego lo volvió a poner en circulación antes de su vencimiento al darlo en prenda al Secretario de Hacienda, no obstante que con posterioridad a su libramiento y a la inscripción de la hipoteca pero con anterioridad a haber sido dado en prenda al Secretario de Hacienda, se embargó el inmueble así gravado en aseguramiento de sentencia en acción de

daños y perjuicios en contra del librador, y dicho inmueble fue subsiguientemente adjudicado al embargante que fue favorecido por dicha sentencia

El presente caso, con alguna variante, guarda gran relación con la normativa expuesta en los casos antes citados. Empero existe una diferencia crucial que es necesaria atender. Nos explicamos.

En el presente caso el librador, el matrimonio Santos Raíces, readquirió por endoso a su favor el pagaré emitido a favor de Banco Bilbao Vizcaya, **el cual no está vencido**, ya que la fecha de vencimiento es el 1ro de agosto de 2008. Sin embargo, al momento de presentarse la escritura de Subordinación al Registro de la Propiedad éstos no habían renegociado el mismo, ello a diferencia de los sucedido en *Srio. de Hacienda v. Tribunal Superior, supra*, donde el mismo día que se readquirió el pagaré los libradores lo pusieron en circulación. Entiende la Registradora que por no haberlo negociado en el mismo momento en que lo readquirió, tal como sucedió en *Srio. de Hacienda v. Tribunal Superior supra*, se extinguió la obligación que garantizaba el pagaré, procediendo su cancelación. Su interpretación, restrictiva por demás, no nos convence. El argumento se desvanece ante la realidad de que el pagaré no pierde su negociabilidad por el episodio temporero de confusión de derechos en que se encuentra, máxime cuando su

vencimiento es al año 2008. *Calo Rivera v. Reyes*, 115 D.P.R. 123, 127 (1984).

Tal como resolvimos en *Srio. de Hacienda v. Tribunal Superior, supra*, a la pág. 444. en el momento en que el matrimonio Santos Raíces readquirió el pagaré hipotecario <u>no vencido</u>:

> **la situación jurídica es idéntica a la que se obtiene cuando una persona suscribe un pagaré al portador y a la presentación, lo garantiza con hipoteca sobre un inmueble de su propiedad y retiene el instrumento negociable por un tiempo y luego lo vende o lo pignora o en otra forma lo pone en circulación. Mientras retiene el pagaré, la vigencia y efectividad del mismo y la de su garantía permanecen latente, pero tan pronto se transfiere la tenencia del instrumento, entra en toda su fuerza y vigor y los derechos que emanan del instrumento y de su garantía desde la fecha misma en que se libró el primero y se presentó para inscripción en el registro de la Propiedad la segunda.**(Énfasis suplido.)

Es decir, en este caso, similar al momento preciso en que se constituye una hipoteca unilateral con pagaré al portador, se entenderá que la obligación cobrará vida nuevamente cuando se re-negocie el pagaré y se entregue al acreedor. No empece a que un sector de la doctrina cuestiona la existencia de la hipoteca mientras el negocio no se ha perfeccionado, la ley acepta esta "anomalía" para favorecer el tráfico de los negocios, como una figura *sui generis*. En *Liechty v. Descartes Sauri, supra,* citando con aprobación a *Morales v. Registrador*, 54 D.P.R. 546,548 (1939) señalamos que:

la escritura de hipoteca en garantía de un pagaré hipotecario al portador no es un contrato bilateral en el momento de su otorgamiento, ni puede ser considerado como tal hasta que el pagaré haya sido negociado por el deudor mediante su entrega a la persona que a su vez le entrega el importe del préstamo" Y, a renglón seguido , añadimos: "Pero tan pronto como el deudor recibe el importe del préstamo y el acreedor acepta el pagaré, como evidencia de la deuda, la oferta contenida en la escritura de hipoteca se convierte en un contrato válido y obligatorio para una y otra parte contrante.

Así pues, al trasladar la normativa antes expuesta a los hechos que nutren el caso de marras, es forzoso concluir que, restando aproximadamente cuatro (4) años para que el pagaré al portador venza, y no estando aquí ante el escenario que contempla el Art. 125.2 del Reglamento Hipotecario, *supra*, que daría paso a la extinción por *voluntad del deudor* de un derecho real inscrito siempre que éste no haya dispuesto de los títulos endosables o al portador, o los haya readquirido por tradición o endoso de la persona a cuya orden fueron transferidos – todo lo contrario, surge del expediente ante nos la intención del matrimonio Santos Raíces de renegociarlo-, el pagaré hipotecario objeto del presente litigio puede ser renegociado y, por ende, no procede la cancelación de su inscripción en el Registro.[2]

---

[2] Art. 125. 2 Extinción del derecho real inscrito, 30 L.P.R.A. sec. 870.472:

Se considerará extinguido el derecho real inscrito:

Así las cosas, y en aras de disuadir cualquiera duda que pueda generar controversias similares a la que hoy nos ocupa, procede modificar nuestro dictamen emitido en *Srio. de Hacienda v. Tribunal Superior, supra*, y la secuela de casos que le citan, a los únicos fines de incluir en dicho razonamiento aquellos pagarés que no se han vencido y que se encuentran en manos de su librador y éste no los ha puesto nuevamente en circulación. Al así resolver, hacemos nuestros los pronunciamientos anteriores de este foro al efecto de que la Ley Hipotecaria debe interpretarse de modo que facilite y proteja el tráfico comercial. *Royal Bank of Canada v. Registrador,* 105 D.P.R. 414 (1976); *Srio. de*

---

Primero: Cuando el derecho real inscrito sobre un inmueble deje completamente de existir.

A)Por renuncia del que lo tenga a su favor.
B)Por mutuo convenio entre los interesados.
C)Por disposición de ley.
D)Por efecto natural del contrato que diere causa a la inscripción.

**Segundo: Cuando el derecho se extingue por voluntad del mismo deudor emitente, siempre que no haya dispuesto de los títulos endosables o al portador, o los haya readquirido por tradición o endoso de la persona a cuya orden fueron transferidos.**

Tercero: Cuando vendida judicialmente la finca y pagado el primer acreedor hipotecario no quedase residuo para aplicar a los demás créditos posteriormente inscritos, conforme a lo dispuesto en el artículo 177 de la ley [30 L.P.R.A. sec. 2573]. (Énfasis suplido.)

*Hacienda v. Tribunal Superior, supra; Arroyo v. Registrador,* 86 D.P.R. 362, 374 (1962); *Roca v. Banco Territorial y Agrícola*, 6 D.P.R. 164, 169 (1904).

### III

Una vez determinado que el instrumento negociable, así como la hipoteca que lo garantiza no se han extinguido, procede que pasemos a considerar si sus libradores, habiendo adquirido el título por endoso a su favor pueden postergar o subordinar el rango de la hipoteca que lo garantiza. Veamos.

Como es sabido, el concepto *rango* se utiliza para designar la posición registral de un derecho real respecto a otros derechos reales, la posición en el orden jerárquico de que recaen sobre el mismo inmueble. Tanto por el significado económico que pueda tener el rango, como por su valor jurídico, nuestro ordenamiento ha viabilizado la oportunidad de que los titulares de derechos puedan negociarlo. Rivera Rivera, *supra*, pág. 202-204.

A tales efectos, el Art. 189 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2608, establece que la hipoteca inscrita podrá permutarse con otra de rango inferior o posponerse a otra de constitución futura, de acuerdo con los requisitos siguientes:

> *Primero.* – Que el acreedor que permute o haya de posponer consienta expresamente en escritura pública a la permuta o posposición.

*Segundo.* – Que la permuta o posposición sea consentida por los acreedores posteriores o intermedios que surjan del Registro. En caso de permuta o posposición deberán siempre consentir los titulares de gravámenes sobre la hipoteca pospuesta o permutada.

*Tercero.* – Que se determine la responsabilidad máxima por capital, intereses, costas u otros conceptos de la hipoteca futura cuyo rango se convierte en superior así como su duración máxima.

*Cuarto.* – Que la hipoteca que haya de anteponerse, bien si se trata de hipoteca futura o de una simultáneamente otorgada, se inscriba dentro del plazo necesariamente convenido al efecto, que no deberá exceder de cuatro años.

Transcurrido el plazo señalado en el número *cuarto* sin que se haya inscrito la nueva hipoteca, caducará el derecho de posposición.

La toma de razón de la posposición a favor de hipoteca futura afectará únicamente a terceros adquirentes de la hipoteca pospuesta.

En lo que respecta al caso de marras, la Registradora de la Propiedad entiende que no se puede posponer o permutar el rango de la hipoteca por razón de que no existe un "acreedor" que lo autorice ello en virtud de lo establecido por el inciso dos (2) del Art. 189 de la Ley Hipotecaria, *supra*. No le asiste la razón.

"La hipoteca en garantía de títulos trasmisibles por endoso o al portador es aquella que se constituye en garantía de créditos **cuyo acreedor o titular se determina por la tenencia del título** (al portador) o por una cláusula de endoso, que legitima para el ejercicio

del crédito hipotecario a su vencimiento". Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, 3ra. Ed., Madrid, Marcial Pons, 1994, pág. 1548. El matrimonio Santos Raíces tenía endosado a su favor el pagaré al portador emitido a favor de Banco Bilbao Vizcaya, habiendo advenido temporeramente como su titular, teniendo por ende sobre el mismo todos los derechos inherentes a su titularidad incluyendo el de posponer o subordinar el rango sin que sea necesario que medie el consentimiento del acreedor futuro.

Así las cosas, constando en escritura pública el convenio celebrado entre los titulares de las hipotecas objeto de litigio, ambas constituidas e inscritas, donde éstos consienten a que se permute el rango pagaré hipotecario en manos del matrimonio Santos Raíces por el pagaré emitido a favor de R&G o a su orden, se encuentran aquí presentes todos los requisitos expuestos en el Art. 189 de la Ley Hipotecaria, *supra*, por lo cual entendemos no existe impedimento legal alguno que impida acceder a dicha solicitud.

IV.

Por los fundamentos expuestos en la opinión que antecede, se revoca la calificación emitida por la Registradora de la Propiedad, Hon. Sandra Valentín, y se ordena la inscripción de la escritura de subordinación de hipoteca objeto del presente litigio, con la prioridad que corresponda a su asiento de presentación.

El Juez Asociado señor Hernández Denton y la Jueza Asociada señora Fiol Matta concurren con el resultado sin opinión escrita. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.


                                        MIRIAM NAVEIRA MERLY
                                          Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


R&G Premier Bank of Puerto Rico

    Recurrente

       v.

                                RG-2004-001

Hon. Sandra Valentín
Registradora de la Propiedad,
Sección Tercera de San Juan

    Recurrida


SENTENCIA


San Juan, Puerto Rico a 22 de julio de 2004


    Por los fundamentos expuestos en la opinión que antecede, se revoca la calificación emitida por la Registradora de la Propiedad, Hon. Sandra Valentín, y se ordena la inscripción de la escritura de subordinación de hipoteca objeto del presente litigio, con la prioridad que corresponda a su asiento de presentación. El Juez Asociado señor Hernández Denton y la Jueza Asociada señora Fiol Matta concurren con el resultado sin opinión escrita. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


                    Patricia Otón Olivieri
             Secretaria del Tribunal Supremo