FEDERAL DEPOSIT INSURANCE CORPORATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, SECCIÓN PRIMERA, recurrido.

*Números:* O-81-249, O-81-250, O-81-251, O-81-475

*Resueltos:* 26 de octubre de 1981

*Francis, Doval, Muñoz, Acevedo, Otero & Trías,* abogados de la recurrente; el Registrador recurrido compareció por escrito.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

La corporación recurrente presentó al Registro una titulada "Acta sobre Declaración de Posesión de Pagaré", documento unilateral en la que solicita del Registrador que haga constar en los libros a su cargo que ella es la tenedora actual de un pagaré al portador y a la vista por $22,000 garantizado con hipoteca sobre rústica de 0.25 cuerdas en el Barrio Turabo, de Caguas, emitido por Rafael Roldán y su esposa Providencia Rodríguez y por éstos entregado al Banco Crédito y Ahorro, llegando a poder de la recurrente como liquidadora de dicho Banco.

El Registrador denegó la inscripción en nota comprensiva de los siguientes fundamentos de calificación:

SE DENIEGA la inscripción del documento relacionado en el epígrafe luego de haberse notificado con fecha 10 de julio de 1981, por razón de no estar incluido entre los inscribibles de acuerdo al Artículo 38 de la Ley Hipotecaria ni siquiera aceptando la más liberal interpretación de las disposiciones allí contenidas; por ser contraria a la institución de la hipoteca en garantía de título-valor, el que el Registro refleje quién es a cada momento el dueño del título; por tener el segundo acreedor otros medios de poner en conocimiento del primer acreedor hipotecario su existencia y paradero para lograr la notificación personal o postal en caso de ejecución del primer crédito; porque ocasionaría una congestión registral de información para la cual el Registro no fue concebido si se registrara la dirección residencial y postal, con sus subsiguientes cambios, de todos los tenedores sucesivos de pagarés garantizados con segunda hipoteca, en especial si se considera que a veces se emiten múltiples títulos con la misma garantía. . . .

En su recurso insiste la corporación tenedora del título al portador en su derecho a que el Registro le provea publicidad a su nombre y dirección para asegurarse de que en caso de ejecución por un acreedor preferente se le citará para la subasta, mediante notificación personal de la naturaleza de emplazamiento según la Regla 4 de Procedimiento Civil y el Art. 149 de la Ley Hipotecaria. De primera impresión la pretensión de la recurrente requeriría insertar en la Ley Hipotecaria lo que no proveyó el legislador, que limitó la acción del Art. 149 al título nominativo o directo con titular personalmente determinado, pues resultaría inoperante de extenderlo a los títulos al portador en los cuales la indeterminación personal del acreedor o titular en un momento dado es absoluta.

El principio de publicidad registral que se manifiesta y conoce hoy como principio de fe pública registral, descansa en la presunción de que el contenido de los libros del Registro ES CONOCIDO POR TODOS, y no podrá invocarse su ignorancia. Solo por excepción equivale esa publicidad a mero anuncio o noticia, como en los casos autorizados por ley, del retracto legal en que se fija un plazo para ejercitarlo a partir de la inscripción del acto enajenativo; y las anotaciones "lis pendens" anunciando la existencia de pleito.

La anotación que interesa la recurrente no está provista por ley, ni podrá estarlo, debido a las especiales características del título al portador. Esta obligación se abstrae de toda constatación nominal de la persona del titular o adquirente del derecho real objeto de inscripción. No le aplican: el requisito del Art. 87(5) de la Ley Hipotecaria de que la inscripción contenga el nombre del titular a cuyo favor se haga la misma; ni el Art. 57, pues falta inevitablemente la previa inscripción a favor de la persona que otorga la trasmisión del crédito; ni el Art. 194 en su exigencia de notificación al deudor, por escritura pública, de

la cesión del crédito hipotecario. Por el contrario declara el Art. 195 que en estas hipotecas en garantía de título al portador "el derecho hipotecario se entenderá transferido, con el título, sin necesidad de dar de ello conocimiento al deudor, ni de hacerse constar la transferencia en el Registro". Consecuente con ese eclipse de la persona del acreedor, el Art. 196 ordena que en la escritura de constitución de hipoteca se haga constar expresamente que "la hipoteca queda constituida a favor de los tenedores presentes o futuros" del mismo, y cuando el librador del pagaré lo recupera, no se produce la cancelación del crédito por confusión de derechos, si opta por ponerlo nuevamente en circulación,(¹) alternativa vedada en la hipoteca directa o nominativa.

■ Estos títulos al portador, por no ser nominativos, por no determinarse en su constitución la persona del acreedor, representan un crédito a ser pagado a la persona que tenga el título en su poder, al que lo presenta, sea quien fuere, toda vez que se transmite por la simple entrega, sin necesidad de endoso ni formalidad alguna; la simple entrega representa su transmisión.(²)

Todas estas peculiaridades del título al portador responden a normas especiales(³) y ad hoc en nuestro Derecho hipotecario que propician su singular propósito una vez puesto en circulación: impartir al inmueble una súbita movilidad que facilita la inyección de capital en la rápida

---

(¹) *Srio. de Hacienda* v. *Tribunal Superior*, 95 D.P.R. 436 (1967).

(²) Morell y Terry, *Comentarios a la Legislación Hipotecaria*, Madrid, Ed. Reus, 1930, T. 4; 2da ed., págs. 258 y ss.

(³) "Esta indeterminación de la persona del titular en esta clase de títulos, unida a la incorporación de la obligación garantida al título, imposibilita la aplicación normal de las reglas comunes relativas a la constitución y régimen de las hipotecas." Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, 2.° pág. 821.

". . . [L]a adaptación de la hipoteca a esta clase de créditos o títulos ha sido laboriosa en nuestra legislación, debido a la circunstancia de la *indeterminación* del titular del crédito y de la *incorporación* de éste a un título." Roca Sastre, *op. cit.*, pág. 879.

corriente del comercio. Mas toda esta evolución se cumple extrarregistralmente pues como advierte Roca Sastre, "[l]a cesión de estos créditos o títulos no repercute en el Registro". (⁴)

El análisis que hemos hecho de este crédito, justamente descrito como *título valor*, de su impredecible peregrinaje independiente, muestra la inaplicación del Art. 149 de la Ley Hipotecaria (⁵) que· exige citación personal de titulares posteriores. Tal citación sólo puede diligenciarse en personas determinadas. Coincidimos con el criterio del Registrador recurrido, de cuyo alegato citamos:

> El artículo 149 de la Ley Hipotecaria claramente se refiere a la citación personal de titulares posteriores *definidos*, aquellos cuyos causahabientes deben acudir al Registro si es que quieren obtener los beneficios del sistema hipotecario: usufructuarios, arrendatarios, acreedores nominativos. Pero no se puede referir a un acreedor que no adquirió su derecho de un titular registral definido, ni pretenderá inscribir la transferencia que él mismo efectúe con posterioridad. La transmisión de instrumentos negociables es esen-

---

(⁴) Roca Sastre, *op. cit.*, págs. 881–882.

(⁵) Art. 149, Ley Hipotecaria.

"Los que registren sus derechos con posterioridad a la anotación se entenderán notificados de la existencia del pleito para todos los efectos legales, y que han consentido la cancelación de sus asientos en caso de que sea vendida judicialmente la finca aunque sus títulos tengan fecha anterior a la anotación.

"Si la sentencia recaída fuese concediendo reinvindicación o confesando la existencia de un derecho real, se actuará con arreglo a lo dispuesto en este artículo, cancelando los asientos contradictorios posteriores a la anotación o inscribiendo los derechos declarados, según procediera.

"En los casos de ejecución de hipoteca, los que hayan inscrito o anotado su derecho con posterioridad a la hipoteca y con anterioridad a la anotación de demanda, deberán ser citados para la subasta conforme a lo dispuesto en la legislación procesal vigente para el caso de los demandados, sin lo cual no podrá ordenar el tribunal la cancelación de estos asientos.

"EL titular demandado que haya comparecido a juicio así como el tercer poseedor que haya procedido con arreglo al Artículo 125, deberá ser citado para la subasta por medio de sus abogados.

"La cancelación de los asientos posteriores a que se refiere este artículo se hará libre de derechos, y en todo caso deberá ordenarse por el Tribunal mediante mandamiento donde se señale con particularidad los asientos a ser cancelados."

cialmente clandestina respecto al Registro de la Propiedad. Esa es su virtud y su dificultad en algunos casos. Lo que pretende el recurrente es aparecer como acreedor determinado en el Registro, pero sin que pierda el instrumento su carácter negociable. Esto nos parece institucionalmente imposible.

Las dificultades aparecen por doquier. . . . En la página 4 del escrito del recurrente, tercer párrafo, se indica que si el poseedor de turno del pagaré es conocido bastará con citarlo personalmente sin tener que publicar edictos. Esta interpretación no se aviene con la institución que nos ocupa. El crédito está incorporado al pagaré, y no hay seguridad alguna de en manos de quién estará en algún momento; quien lo tenga en buena ley tendrá todos sus derechos procesales y sustantivos intactos, no importa las citaciones personales que se hayan realizado a anteriores dueños. El adquirente no tiene que acudir al Registro, ni a investigar si su transferente es titular registral, ni a inscribir su título. Es inescapable la citación por edictos en estos casos, el caso debe tratarse siempre como si fuese un demandado desconocido.

Nótese que a un acreedor citado personalmente sólo le bastaría transferir el pagaré para anular los efectos de la citación.

No ha planteado problema hasta hoy al tenedor de un título al portador cuya garantía hipotecaria es de rango inferior, enterarse del progreso de ejecución de los gravámenes preferentes a los fines de proteger su crédito en la subasta. La necesidad de tomar la iniciativa de identificarse ante el ejecutante como tenedor del título, con condición de acreedor posterior, es simplemente parte de la realización de la garantía de segundo rango que originalmente aceptó, dentro de las ventajas e inconvenientes de esta peculiar obligación. Sólo nos resta resumir que tanto en su peculiar organización bajo la Ley Hipotecaria como por razones prácticas, el Registro de la Propiedad no puede operar como indicador de bolsa de valores, recogiendo en sus asientos con relativa prontitud el curso de negociación y entrega a sucesivos portadores o endosata-

rios de estos pagarés cuya negociabilidad y fluidez en el tráfico mercantil son sus más útiles características. La indeterminación personal del acreedor y su libre arbitrio para inscribir o no la posesión, resultarían en una publicidad poco confiable y engañosa, en una fe registral quebrada.

*Con estos antecedentes y fundamentos la calificación recurrida será confirmada.*

El Juez Presidente Señor Trías Monge se inhibió.