ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X
(DJ 2024-062C)

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO, <br><br> Apelada, <br><br> v. <br><br> JOSÉ ABIMAEL LÓPEZ RÍOS, YOLANDA ALICEA DÍAZ y la sociedad legal de gananciales compuesta por ambos, <br><br> Apelante. | TA2025AP00110 | APELACIÓN procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón, Sala Superior de Vega Baja (Limitada). <br><br> Civil núm.: D4CD2017-0159. <br><br> Sobre: cobro de dinero y ejecución de hipoteca (vía ordinaria). |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2025.

El 10 de julio de 2025, los señores José Abimael López Ríos y Yolanda Alicea Díaz, y la sociedad legal de bienes gananciales compuesta por ambos (parte demandada-apelante o matrimonio López-Alicea) instaron este recurso de apelación, con el propósito de que este Tribunal revoque la sentencia dictada sumariamente por el Tribunal de Primera Instancia, Sala Superior de Vega Baja. El matrimonio López-Alicea aduce que el foro primario erró, pues existen hechos medulares en controversia, que impiden que se dicte sentencia sumariamente. En particular, si el Banco Popular de Puerto Rico (BPPR) cuenta con legitimación activa para instar la acción de ejecución de hipoteca, o si, por el contrario, ese derecho lo ostenta un tercero.

El 5 de agosto de 2025, la parte demandante-apelada, el BPPR presentó su alegato en oposición, en el cual solicitó la confirmación de la sentencia emitida por el Tribunal de Primera Instancia.

Examinado el recurso de apelación y la oposición al mismo, a la luz del derecho aplicable, y por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

I

El 10 de mayo de 2017, el Banco Popular de Puerto Rico (BPPR) presentó la demanda de autos, sobre cobro de dinero y ejecución de hipoteca, en contra del matrimonio López-Alicea. El BPPR alegó que el matrimonio López-Alicea había incumplido con su obligación de pago, por lo que, conforme al contrato de constitución de hipoteca, el BPPR aceleró la deuda y declaró la misma vencida, líquida y exigible. El BPPR solicitó al tribunal la concesión de varios remedios; entre ellos, que se declarara que el matrimonio López-Alicea le adeudaba las sumas reclamadas y que, de no efectuarse el pago, se ordenase al alguacil del tribunal la venta en pública subasta del inmueble hipotecado objeto de controversia en este caso[1].

El 9 de junio de 2017, el matrimonio López-Alicea presentó su contestación a la demanda, en la cual planteó que la propiedad objeto del litigio constituía su residencia principal, por lo que solicitó que el caso fuera referido al proceso de mediación compulsoria ordenado por la Ley Núm. 184-2012, según enmendada, intitulada *Ley para mediación compulsoria y preservación de tu hogar en los procesos de ejecuciones de hipotecas de una vivienda principal*, 32 LPRA sec. 2881-2886.

El 15 de agosto de 2018, el Centro de Mediación de Conflictos (CMC) notificó al Tribunal de Primera Instancia, mediante el formulario correspondiente, que el BPPR había cumplido con brindar la orientación requerida cónsono con las disposiciones de la Ley Núm. 184-2012, según enmendada[2].

Posteriormente, el 29 de marzo de 2022, el BPPR presentó una demanda enmendada, en la cual reiteró las alegaciones de la demanda original; entre ellas, que el matrimonio López-Alicea había suscrito un pagaré hipotecario en o alrededor del 30 de agosto de 2004, por la suma principal de $86,400.00, más intereses al 7.00% anual y demás créditos

---

[1] *Véase*, entrada 1 de SUMAC TA, apéndice 10.

[2] *Véase*, entrada 5 de SUMAC TA, apéndice 1.

accesorios por endoso[3]. Asimismo, sostuvo ser el acreedor del referido instrumento negociable y tener derecho a exigir su cumplimiento por encontrarse el original del pagaré en su posesión[4].

En la contestación a demanda enmendada presentada el 28 de abril de 2022, el matrimonio López-Alicea admitió haber suscrito el pagaré por la suma indicada en la demanda[5]. No obstante, reiteró su solicitud de que se desestimara con perjuicio la demanda, pues adujo que el BPPR: (1) carecía de legitimación activa y no era parte con interés real para instar el pleito; e (2) había incumplido con las disposiciones de la Regla 96.2(2) del *Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*[6].

El 12 de enero de 2024, se celebró la nueva reunión de mediación compulsoria en virtud de la Ley Núm. 184-2012, según enmendada, 32 LPRA sec. 2881-2886. En ella, el BPPR adujo que era el **agente de servicio** del préstamo hipotecario, delegado por un supuesto **inversionista** (i.e., Wells Fargo o Deutsche Mortgage Securities, Inc.) para el cobro y ejecución del préstamo hipotecario[7].

El 8 de julio de 2024, tras concluir la mediación compulsoria por el rechazo de la alternativa ofrecida al matrimonio López-Alicea, el Tribunal de Primera Instancia celebró una vista evidenciaría. Es importante destacar que, durante la vista, el BPPR presentó el pagaré original con el endoso en blanco, y el matrimonio López-Alicea reconoció que no había controversia sobre dicho pagaré[8]. Sin embargo, el matrimonio López-Alicea reiteró sus alegaciones respecto a la falta de legitimación activa del BBPR, pues adujo

---

[3] *Véase*, entrada 1 de SUMAC TA, apéndice 13.

[4] *Íd.*

[5] *Íd.*, entrada 1 de SUMAC TA, apéndice 14.

[6] *Íd.*, entrada 1 de SUMAC TA, apéndice 14.

[7] *Íd.*, entrada 1 de SUMAC TA, apéndice 15.

[8] *Íd.*, entrada 5 de SUMAC TA, apéndice 2.

que, si bien el BPPR era el tenedor del pagaré hipotecario, solo era un mero agente de servicio del verdadero acreedor hipotecario[9].

El 18 de julio de 2024, el BPPR presentó una moción de sentencia sumaria[10], en la cual solicitó que se declarara que el matrimonio López-Alicea le adeudaba la suma de $77,575.33, por concepto de principal, más intereses acumulados al 7.00% anual, computado desde el 1 de diciembre de 2015, hasta su pago total. Además, reclamó cargos por demora equivalentes al 5.00% de la suma de todos aquellos pagos con atraso, más las costas, gastos y honorarios legales por $8,106.18, y una suma adicional equivalente al 10% de la cuantía principal para cubrir adelantos futuros y otros intereses garantizados por ley[11].

El 7 de octubre de 2024, el matrimonio López-Alicea presentó una moción de desestimación por falta de jurisdicción sobre la materia, conforme a la Ley Núm. 184-2012, según enmendada, 32 LPRA sec. 2881-2886. El matrimonio López-Alicea solicitó al Tribunal de Primera Instancia que procediera con la desestimación de la demanda por el fundamento de que el BPPR, o Deutsche Mortgage Securities, Inc. (DMSI), o el Inversionista, o ambos, habían incumplido con el deber de actuar de buena fe en el proceso de mediación[12].

Además, el 18 de noviembre de 2024, el matrimonio López-Alicea presentó su oposición a la solicitud de sentencia sumaria[13]. En su moción, solicitó al tribunal que: (1) examinara su moción de desestimación y la

---

[9] *Véase*, entrada 5 de SUMAC TA, apéndice 2.

[10] *Íd.*, entrada 1 de SUMAC TA, apéndice 7. Anejó a la moción los siguientes documentos: (1) copia del pagaré hipotecario; (2) una declaración jurada; (3) copia de la escritura de hipoteca; y, (4) la correspondiente Certificación Registral.

[11] *Íd.*

[12] *Íd.*, entrada 1 de SUMAC TA, apéndice 8.

[13] *Íd.*, entrada 1 de SUMAC TA, apéndice 9. Anejó a la moción los siguientes documentos: (1) una certificación de su capacidad representativa; (2) una carta de delegación al BPPR; (3) el desglose del beneficiario José A. López sobre la cantidad recibida por el Seguro Social Federal; (4) el desglose del beneficiario Yolanda Alicea Díaz sobre la cantidad recibida por el Seguro Social; (5) el acuerdo de un plan de pago; y (6) un análisis de mitigación de deuda.

declarara con lugar; (2) en la alternativa, determinara que existía controversia sobre un hecho material[14].

Mediante la *Resolución* emitida el 7 de febrero de 2025, notificada el 10 de febrero de 2025, el Tribunal de Primera Instancia declaro sin lugar la moción en solicitud de sentencia sumaria presentada por el BPPR el 18 de julio de 2024. De igual forma, declaró sin lugar la moción de desestimación por falta de jurisdicción sobre la materia presentada por el matrimonio López-Alicea el 7 de octubre de 2024. Inconformes con dicha determinación, tanto el BPPR como el matrimonio López-Alicea presentaron sendas solicitudes de reconsideración[15].

El 10 de junio de 2025, el Tribunal de Primera Instancia emitió una *Sentencia*, notificada el 11 de junio de 2025. En ella, declaró con lugar la moción de reconsideración y la moción de sentencia sumaria presentadas por el BPPR[16]. El tribunal acogió el planteamiento del BBPR y concluyó que, conforme a la *Ley de Transacciones Comerciales*, Ley Núm. 208 de 17 de agosto de 1995, 19 LPRA sec. 401-2409; en particular, la Sec. 2-301, 19 LPRA sec. 601, **el BPPR era el tenedor de un instrumento negociable con endoso en blanco, por lo que ostentaba el derecho a reclamar su pago**. En consecuencia, denegó la solicitud de desestimación presentada por el matrimonio López-Alicea[17].

En su *Sentencia*, el tribunal formuló las siguientes determinaciones de hechos:

1. El día 30 de agosto de 2004, José Abimael López Ríos, Yolanda Alicea Díaz y la sociedad legal de bienes gananciales compuesta por ambos, otorgaron, ante el Notario David Gómez Rosario, el testimonio número 2695, un pagaré a favor de Sana Investment & Mortgage Bankers o a su orden, por la suma principal de $86,400, más intereses desde esa fecha hasta el pago total del principal a razón del 7.000% de interés anual sobre el balance adeudado (el pagaré o instrumento). Además, el pagaré provee para pagar recargos por demora equivalentes a 5.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la

---

[14] *Véase*, entrada 5 de SUMAC TA, apéndice 9*.*

[15] *Íd.*, entrada 1 de SUMAC TA, apéndices 4 y 5.

[16] *Íd.*, entrada 1 de SUMAC TA, apéndice 2.

[17] *Íd.*

fecha de vencimiento; y una cantidad equivalente a $8,106.18, por costas, gastos y honorarios de abogado, en caso de reclamación judicial.

2. Para garantizar el pago del pagaré objeto de controversia, en el presente caso, se constituyó una hipoteca voluntaria, mediante la Escritura Número 340, otorgada el día 30 de agosto de 2004, ante el Notario David Gómez Rosario. (La escritura de hipoteca).

3. La escritura de hipoteca grava el bien inmueble que se describe a continuación (la finca o propiedad):

   URBANA: Parcela de terreno marcada con el #6 del bloque F de la Urbanización Vista Verde, en el Barrio Pugnado Afuera del término municipal de Vega Baja, Puerto Rico, con un área de 310.54 metros cuadrados. En lindes por el NORTE, en 12.50 metros con la calle #3; por el SUR, en 12.50 metros con el solar #3 del bloque F; por el ESTE, en 24.843 metros con el solar #5 del bloque F y por el OESTE, en 24.843 metros con el solar #7 del bloque F.

4. La finca o propiedad antes descrita consta inscrita al folio 15 del tomo 263 de Vega Baja, Registro de la Propiedad de Bayamón, Sección Cuarta, finca número 22146.

5. La hipoteca consta inscrita al folio 167 del tomo 415 de Vega Baja, Registro de la Propiedad de Bayamón, Sección Cuarta, finca número 22146.

6. La hipoteca y el pagaré antes relacionado fueron modificados, mediante la Escritura de Modificación de Hipoteca número 780, otorgada el 26 de octubre de 2012, ante el Notario Gadiel O. Rosario Rivera, a favor de Doral Mortgage LLC. Se modificó, en cuanto al principal, que será por $81,061.81, y vencedero el 1 de octubre de 2031.

7. La hipoteca fue constituida para garantizar: (a) el repago de la deuda evidenciada por el pagaré, (b) una suma equivalente a $8,106.18, para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca, (c) una suma equivalente a $8,106.18, para cubrir intereses, además, a los garantizados por ley, y (d) una suma equivalente a $8,106.18, para cubrir costas, gastos y honorarios de abogados.

8. **La parte demandante es la parte con derecho a exigir el cumplimiento del instrumento**.

9. La parte demandada ha dejado de pagar las mensualidades vencidas desde el día 1 de diciembre de 2015 y, en su consecuencia, ha incurrido en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses, según acordados.

10. La demandada de epígrafe adeuda al demandante las siguientes sumas: $77,575.33, en principal, más los intereses al 7.000% anual, desde el día 1 de diciembre de 2015, así como los intereses acumulados y por acumularse a partir de esa fecha, y hasta el total y completo repago de la deuda; cargos por demora, equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento, hasta el total y completo repago de la

deuda; $8,106.18, es decir, el 10% sobre el principal del pagaré hipotecario, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efectos en el pagaré.

11. BPPR ha realizado gestiones para obtener el pago de las sumas reclamadas, resultando tales gestiones infructuosas, por lo cual ha declarado vencida la totalidad de la deuda[18].

(Énfasis nuestro).

Insatisfechos con la *Sentencia* emitida, el 10 de julio de 2025, el matrimonio López-Alicea instó este recurso y formuló los siguientes señalamientos de error:

Erró el Honorable Tribunal de Primera Instancia al concluir que BPPR es el acreedor del Pagaré Hipotecario, al ser el tenedor legal del pagaré, y por ende posee legitimación activa, con derecho a ejecutar la garantía hipotecaria a pesar de que de la propia solicitud de sentencia sumaria surge que BPPR es agente de servicio de un "inversionista", al que no identifica, ni presenta evidencia.

Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia Sumaria a favor de BPPR a pesar de que actuaron de mala fe en violación a la Ley Núm. 184 de 17 de agosto de 2012, Ley Para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal, 32 L.P.R.A. §2881, et seq., por lo que procedía la desestimación con perjuicio oportunamente sometida por los Demandados-Apelantes.

Conforme le fuera ordenado, el BPPR presentó su oposición el 5 de agosto de 2025.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

II

A

Los instrumentos negociables o títulos transferibles por endoso o al portador requieren un tratamiento distinto al brindado a los pagarés e hipotecas reguladas por el Código Civil. A estos efectos, el Tribunal Supremo de Puerto Rico ha aclarado que, debido a la negociabilidad de los instrumentos en el tráfico comercial, estos se rigen por la *Ley de*

---

[18] *Véase*, entrada 1 de SUMAC TA, apéndice 2.

*Transacciones Comerciales*[19]. *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR 950 (2019).

Para llegar a esta conclusión, el Tribunal Supremo de Puerto Rico se amparó en la *Ley de Transacciones Comerciales*[20], en consonancia con lo dispuesto en la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001-6561. Ello, a la luz de que la *Ley del Registro de la Propiedad Inmobiliaria* establece en su Art. 96 que, "en los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos". 30 LPRA sec. 6133.

Por lo tanto, para que apliquen las disposiciones mercantiles, según lo dispuesto en la *Ley del Registro de la Propiedad Inmobiliaria*[21], los pagarés hipotecarios deben ser caracterizados como instrumentos negociables conforme la legislación mercantil vigente. En atención a esto, **el Tribunal Supremo concluyó que un pagaré hipotecario constituye una promesa comprendida dentro de la definición de instrumentos negociables de la *Ley de Transacciones Comerciales*.** *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR 950, 963 (2019).

La *Ley de Transacciones Comerciales* define un **instrumento negociable** como "una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden […]". 19 LPRA sec. 504(a). A su vez, define la promesa como "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". 19 LPRA sec. 503(a)(9). Por lo tanto, si un pagaré hipotecario es una promesa, se encuentra comprendido, entonces, dentro de la definición de un instrumento negociable. *Íd.*

---

[19] Ley Núm. 208 de 17 de agosto de 1995, 19 LPRA sec. 401-2409.

[20] *Íd.*

[21] Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001-6561.

La Sección 2-104(a) de la *Ley de Transacciones Comerciales* dispone que un instrumento es negociable si:

(1) Es pagadero al portador o a la orden al momento o cuando primero adviene a la posesión de un tenedor;

(2) Es pagadero a la presentación o en una fecha específica; y

(3) No especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero […].

19 LPRA sec. 504.

No obstante, la promesa puede incluir "un compromiso o poder para dar, mantener o proteger un colateral para garantizar el pago". 19 LPRA sec. 504(a)(3). En consecuencia, "**un pagaré garantizado por una hipoteca puede ser un instrumento negociable porque el compromiso de ofrecer como colateral la hipoteca para garantizar el pago no afecta su negociabilidad**". *Des. Caribe v. Ven-Lour Enterprises*, 198 DPR 290, 299 (2017). (Énfasis nuestro).

En nuestro ordenamiento, es norma reiterada que el pagaré al portador se transfiere por la mera entrega. Es **desde ese momento que el portador o tenedor tiene legitimación activa** para reclamar su cumplimiento. *Lozada Merced v. Registrador*, 100 DPR 99, 104 (1971). De hecho, el Tribunal Supremo ha expresado que, debido a que **en los pagarés al portador no se determina la persona del acreedor, quien ostenta el crédito a pagarse es el tenedor.** *FDIC v. Registrador*, 111 DPR 602, 605 (1981). Esto, "toda vez que se transmite por la simple entrega, sin necesidad de endoso ni formalidad alguna, pues la simple entrega representa su transmisión". *Íd.*

A esos fines, la *Ley de Transacciones Comerciales* regula quiénes tienen derecho a exigir el cumplimiento de un instrumento negociable. En específico, establece lo siguiente:

(i) **el tenedor del instrumento**, (ii) una persona que no es tenedor[,] pero está en posesión del instrumento y tiene los derechos de un tenedor, o (iii) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las

disposiciones de la Sección 2-309 y de la Sección 2-418(d)[22]. Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento [,] aunque la persona no sea el dueño del instrumento o lo posea indebidamente. (Énfasis suplido).

19 LPRA sec. 601.

En cuanto a la transmisión de los instrumentos negociables, la *Ley de Transacciones Comerciales* dispone que se pueden transmitir mediante la cesión. En particular, la Sección 2-203(a) expresa que el instrumento se cede en el momento en que se entrega por quien no es su emisor, **para así otorgarle a quien lo recibe el derecho a exigir su cumplimiento**. 19 LPRA sec. 553(a). Además, la cesión del instrumento le otorga al cesionario "cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe". 19 LPRA sec. 553(b). No obstante, "el cesionario no podrá adquirir los derechos de un tenedor de buena fe por una cesión directa o indirecta de un tenedor de buena fe si el cesionario participó en fraude o ilegalidad que afectó al instrumento". *Íd.*

B

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o por aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que tiene un impacto sobre el resultado de la reclamación según el derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente

---

[22] La Sección 2-309 de la *Ley de Transacciones Comerciales* se refiere al cumplimiento de un instrumento perdido, destruido o robado. Por su parte, la Sección 2-418(d) gira en torno al pago o aceptación por error de un instrumento negociable. 19 LPRA sec. 601.

para derrotar una Solicitud de Sentencia Sumaria". *Ramos Pérez v. Univisión*, 178 DPR, a las págs. 213-214.

De otra parte, al evaluar la solicitud de sentencia sumaria, "se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente". *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Con relación a los hechos relevantes sobre los cuales se plantea la inexistencia de una controversia sustancial, la parte promovente "está obligada a desglosarlos en párrafos debidamente enumerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432. Por su lado, la parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *López v. Miranda*, 166 DPR 546, 563 (2005).

A esos efectos, procede que se dicte sentencia sumaria únicamente cuando de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". *Oriental Bank v. Caballero García*, 212 DPR 671 (2023). Cumplidos estos requisitos, resulta innecesaria la celebración de un juicio, pues únicamente resta aplicar el derecho a los hechos no controvertidos. *Íd.*

En sentido contrario, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho, no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008).

C

La *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, Ley Núm. 184-2012, 32 LPRA sec. 2881-2886, establece un mecanismo de mediación compulsoria en aquellos casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca o uno que pueda culminar en la venta judicial de una propiedad residencial, que constituya una vivienda principal[23]. Según se discute en *Scotiabank v. SLG Rosario Castro*, 205 DPR 537, 552 (2020), el propósito de la Ley Núm. 184-2012 "es que el acreedor y el deudor lleguen a un acuerdo que evite la ejecución y la venta en pública subasta de la vivienda principal del deudor."

En lo pertinente, el Art. 2(b) de la Ley Núm. 184-2012, 32 LPRA sec. 2881, define el término mediación compulsoria como:

> (b) Mediación compulsoria: En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación conducida en una sala o salón del Tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, pero que no podrá ser en las oficinas del acreedor hipotecario o de sus abogados o representantes legales o asesores, y presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. En dicha reunión el **acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal.** El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal. (Énfasis suplido).

En el inciso (c) del referido artículo se define acreedor hipotecario como:

> cualquier persona natural o jurídica o una entidad prestataria o financiera o un banco o una cooperativa debidamente autorizados por las Leyes de Puerto Rico y las Leyes de los Estados Unidos de América para conceder o que conceda préstamos con garantía hipotecaria, incluyendo préstamos de hipoteca inversa ("reverse mortgage"), sobre una residencia o vivienda principal.

---

[23] Para efectos de esta Ley, la "propiedad principal de vivienda" es aquella que se usa como hogar principal y que, para fines de contribuciones sobre bienes inmuebles, es la primera residencia o aquella que gozaría de aplicar en cada caso una exención contributiva. *Exposición de Motivos*, Ley Núm. 184-2012.

32 LPRA sec. 2881.

Conforme a lo dispuesto en el Art. 3 de la Ley Núm. 184-2012, el representante del acreedor debe ostentar plena autoridad para negociar en representación de la entidad financiera, lo que incluye la capacidad para celebrar acuerdos de pago, modificaciones o cualquier otra alternativa de retención del inmueble. 32 LPRA sec. 2882. A tales fines, **está obligado a presentar la documentación que acredite su facultad representativa**. *Íd.*

Asimismo, el representante del acreedor **debe informar al deudor, tanto de forma verbal como escrita, sobre todas las alternativas disponibles para evitar la pérdida del inmueble**, que incluya aquellas que no dependan de la capacidad económica del deudor. *Íd.* Según dispone el Art. 3 de la Ley Núm. 184-2012, estas posibles alternativas son "la venta corta "short sale", la dación en pago, entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor." *Íd.*

Mediante el aludido mecanismo, "el representante del acreedor o inversionista le **informará al deudor para cuales de las alternativas cualifica y se le explicarán las razones para no estar disponibles las alternativas para las que no cualifique**." 32 LPRA sec. 2882.

En caso de que el deudor no se presente a la mediación sin justificación o no cumpla con las obligaciones de entrega de documentos o con el acuerdo alcanzado, se considerará que desistió del proceso de mediación, y el acreedor podrá proseguir con la ejecución hipotecaria conforme a lo establecido en el contrato o pagaré original. *Íd.* Por otro lado, si el acreedor no actúa de buena fe en el proceso de mediación o no cumple con sus obligaciones, el tribunal puede desestimar la demanda sin perjuicio para el deudor[24]. *Íd.*

---

[24] Según se discute en *Scotiabank v. SLG Rosario Castro*, 205 DPR 537 (2020), "[a]l amparo de la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal, Ley Núm. 184-2012, es un requisito que la conducta de las partes en el proceso de mediación sea acorde con la buena fe. Así, cuando un acreedor hipotecario no provee todas las alternativas disponibles en el mercado, claramente no actúa conforme a la buena fe."

Lo dispuesto en la referida Ley Núm. 184 será un requisito jurisdiccional en los procesos que se lleven ante los tribunales de Puerto Rico[25]. De no cumplirse con el requisito jurisdiccional de la mediación compulsoria en los casos que aplique, no podrá dictarse sentencia ni ordenarse la venta judicial del inmueble que se utiliza como residencia principal. *Oriental Bank v. Caballero García*, 212 DPR 671, 673 (2023). Acorde con ello, el tribunal podrá continuar con el proceso judicial cuando:

> (1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó; (2) **las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo**; o (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación.

*Íd.*

Sin embargo, "el mero hecho de que las partes comparezcan a una vista de mediación y no lleguen a un acuerdo, sin más, no es suficiente para determinar que el proceso de mediación culminó infructuosamente." *Oriental Bank v. Caballero García*, 212 DPR 671 (2023). Es fundamental, que, antes de resolver el caso por la vía judicial, los tribunales se aseguren de que la mediación compulsoria se haya realizado conforme a las disposiciones de nuestro ordenamiento jurídico. *Íd.*

III

A la luz de lo antes expuesto, nos corresponde determinar si el foro primario erró al declarar con lugar la moción de reconsideración y la moción en solicitud de sentencia sumaria presentadas por el BPPR al concluir que este demostró poseer física y legalmente el pagaré hipotecario objeto del presente caso, satisfaciendo así el requisito de legitimación activa. Evaluado el expediente ante nuestra consideración, a la luz del derecho aplicable, resolvemos que no le asiste la razón a la parte apelante. Veamos.

En primer lugar, debemos destacar que las Reglas de Procedimiento Civil establecen que podrá dictarse sentencia sumariamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales

---

[25] El requisito jurisdiccional se refiere a que ocurra un señalamiento o citación para una vista de mediación, pero la extensión de dicho procedimiento y su resultado dependerán de la conducta de las partes. *Bco. Santander v. Correa García*, 196 DPR 452, 473 (2016); *Scotiabank v. SLG Rosario Castro*, 205 DPR 537, 550 (2020).

del caso y, además, si el derecho aplicable lo justifica. A su vez, la controversia relacionada a un hecho material debe ser real, por lo que cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria.

Ahora bien, nuestra facultad revisora está limitada a considerar los documentos que se presentaron en el foro primario, y a determinar si existe o no alguna controversia genuina de hechos materiales y esenciales. A su vez, nos corresponde determinar si el derecho se aplicó de forma correcta.

Surge del expediente que, el 30 de agosto de 2004, el matrimonio López-Alicea otorgó el pagaré hipotecario objeto de esta controversia y, en la actualidad, dicho pagaré se encuentra en posesión del BPPR[26].

Como se expuso previamente, la *Ley de Transacciones Comerciales* faculta a los tenedores o poseedores de un instrumento negociable a exigir su cumplimiento y a ejecutar la garantía hipotecaria. 32 LPRA sec. 2882. Asimismo, **dispone que el pagaré al portador es un instrumento negociable cuya transferencia se efectúa por la mera entrega, sin que sea necesario identificar al acreedor específico para que el tenedor ostente legitimación activa con derecho a ejecutar la garantía hipotecaria**. En ese sentido, **la legitimación para ejecutar la hipoteca no depende de la identificación de un inversionista, sino exclusivamente del carácter negociable del pagaré y de la tenencia legítima del instrumento**.

En el presente caso, no cabe duda alguna de que el BPPR posee el pagaré original[27] en controversia, el cual contiene un endoso en blanco. Este hecho quedó demostrado en la vista evidenciaría celebrada el 8 de julio de 2024, en la que el matrimonio López-Alicea reconoció que no existía controversia sobre dicho pagaré[28]. Asimismo, el BPPR presentó junto con su moción de sentencia sumaria una declaración jurada que acredita su

---

[26] *Véase*, entrada 1 de SUMAC TA, apéndice 7.

[27] La copia del pagaré fue anejada a la moción en solicitud de sentencia sumaria presentada por el BPPR. Entrada 1 de SUMAC TA, apéndice 7.

[28] *Íd.*, entrada 5 de SUMAC TA, apéndice 2, pág. 3-4.

condición de tenedor legítimo con derecho a exigir el cumplimiento del instrumento.

Tanto la norma como la intención del Legislador al promulgar la *Ley de Transacciones Comerciales* son inequívocas. Lo determinante en este caso no es la identidad del acreedor, sino quién ostenta la tenencia del pagaré. Aún si el BPPR actúa como agente de servicio en representación del acreedor, ello no le resta legitimación ni capacidad para exigir el cumplimiento de la deuda, ya que la ley reconoce a todo tenedor de un pagaré al portador la facultad de ejecutar el mismo.

Este reconocimiento cobra especial relevancia al analizar la actuación del BPPR al amparo de la Ley Núm. 184-2012, y su jurisprudencia interpretativa. Entre los criterios esenciales para acreditar la buena fe en la mediación compulsoria se encuentra precisamente ostentar legitimación activa y capacidad real para actuar en representación del acreedor hipotecario.

En este caso, el BPPR no solo demostró dicha legitimación presentando el pagaré original, sino que además participó en varias reuniones de mediación, ofreció la alternativa de un plan de pago, comunicó las razones de la denegatoria de forma justificada y acudió a las vistas con toda la documentación necesaria.

La negativa del matrimonio a aceptar la alternativa ofrecida no desvirtúa la buena fe del BPPR, pues la ley y la doctrina aplicables no exigen alcanzar un acuerdo, sino actuar con diligencia, honestidad y cumplimiento de los deberes de información y negociación. En consecuencia, no existe evidencia suficiente para concluir que el BPPR hubiera actuado de mala fe, incumpliendo así con la Ley Núm. 184-2012.

No cabe duda de que, en este caso, no existe controversia sobre la condición del BPPR como tenedor y dueño del pagaré, por lo que resulta incorrecto concluir que la entidad actuase de mala fe durante el proceso de mediación.

Los errores apuntados por la parte apelante no se cometieron, por lo que el foro primario actuó correctamente al emitir su dictamen, pues no existe controversia alguna sobre algún hecho material que impida disponer del caso de manera sumaria.

IV

Conforme a los hechos y el derecho consignados, este Tribunal **confirma** la *Sentencia* emitida y notificada el 10 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Vega Baja.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones