ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| FINANCE OF AMERICA REVERSE LLC.<br><br>Parte Apelada<br><br>v.<br><br>FRANCIS ANA DEL CARMEN LEÓN COLLAZO T/C/C FRANCIS A. DEL CARMEN LEÓN COLLAZO T/C/C FRANCIS LEÓN COLLAZO; MARIO DEL PERPETUO SOCORRO ARRUE GONZÁLEZ T/C/C MARIO ARRUE GONZÁLEZ T/C/C MARIO ARRUE; Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA ENTRE AMBOS;<br><br>**OLYMPUS INVESTMENT CORPORATION**; ESTADOS UNIDOS DE AMÉRICA<br><br>Parte Apelante | TA2025AP00634 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2019CV02371<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 16 de marzo de 2026.

Comparece ante nos la corporación Olympus Investment Corporation (parte apelante) mediante recurso de Apelación y nos solicita la revisión de una *Sentencia* emitida el 8 de agosto de 2025 y posteriormente enmendada *Nunc Pro Tunc* el 18 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, el foro primario dictó sentencia sumaria declarando *Con Lugar* la demanda de título.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

**I**

El caso de epígrafe comenzó el 8 de marzo de 2019, cuando la corporación Finance of America Reverse LLC. (FAR o la parte apelada)

presentó una *Demanda*[1] sobre ejecución de hipoteca contra Mario Del Perpetuo Socorro Arrue González; Francis Ana del Carmen León Collazo; la Sociedad Legal de Bienes Gananciales Compuesta por ambos (matrimonio Arrue-León); Olympus Investment Corporation, y el gobierno de los Estados Unidos de América. En síntesis, adujo que el 13 de julio de 2014, el matrimonio Arrue-León suscribió un pagaré hipotecario revertido a favor de R.F. Mortgage and Investment Corporation, garantizado por la Administración Federal de Vivienda (FHA). Mediante el mismo, se le concedió un préstamo al matrimonio por la cantidad de novecientos treinta y ocho mil doscientos cincuenta dólares ($938,250.00) y, mediante escritura, se constituyó la hipoteca sobre un inmueble de su propiedad radicado en el Reparto Santa María, Barrio Monacillos de Río Piedras (la propiedad). Manifestó que los deudores obligacionales incurrieron en incumplimiento, conforme a los términos y condiciones de la hipoteca, al dejar de mantener la propiedad asegurada y transferir el título de la propiedad a favor de Olympus Investment Corporation. Por consiguiente, arguyó que procedía el cobro de la totalidad de la deuda vencida, la cual ascendía a doscientos tres mil ciento cuarenta y un dólares y ochenta centavos ($203,141.80) de principal; intereses al 5.060%; y noventa y tres mil ochocientos veinticinco dólares ($93,825.00) para gastos, costas y honorarios de abogado. Asimismo, solicitó la ejecución y venta en pública subasta del bien inmueble garantizado hipotecariamente y la concesión de cualquier remedio que procediese en derecho.

Luego de varios trámites procesales, el 11 de agosto de 2022, la parte apelada presentó una *Moción para Reabrir el Caso, Enmendar la Demanda y para que se Expida Emplazamiento al Banco Popular de Puerto Rico.*[2] La referida moción fue acompañada de una *Demanda Enmendada,*[3] a los fines de incluir como demandado al Banco Popular. Posteriormente, el 27 de septiembre de 2022, la parte apelada presentó una *Moción*

---

[1] Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 1.
[2] SUMAC TPI, a la Entrada Núm. 40.
[3] *Id.,* al Anejo 1.

*Solicitando Anotación de Rebeldía*.[4] Alegó que, a excepción del Banco Popular quien solicitó término adicional para contestar la demanda enmendada, había transcurrido el término para que las partes restantes en el pleito presentasen una alegación responsiva. Dado lo anterior, solicitó que se le anotase rebeldía a la parte apelante.

En consecuencia, el 21 de octubre de 2022, compareció Olympus mediante *Contestación a la Demanda Enmendada*.[5] En la referida, negó muchas de las alegaciones, admitió su titularidad sobre la propiedad objeto de la controversia y las constancias del Registro de la Propiedad. Asimismo, esbozó que era un tercero registral y que, además, en el caso KCD2015-0077 se dilucidaban asuntos cuyo resultado podía incidir en los reclamos del caso de título. A tenor, solicitó que se desestimase la demanda y que se ordenase el pago de costas, gastos y honorarios de abogados.

Posteriormente, el 15 de agosto de 2023, FAR presentó una *Moción en Solicitud de Anotación de Rebeldía*.[6] Mediante la referida, reiteró que el matrimonio Arrue-León fue debidamente emplazado y solicitó que se dictara sentencia en rebeldía en contra de este. En la misma fecha, la parte apelada presentó *Moción de Sentencia Sumaria*.[7] Esbozó que no existían hechos en controversia y que, de los propios hechos incontrovertidos, surgía el incumplimiento del matrimonio con los términos del pagaré hipotecario. A tenor, solicitó al foro primario que declarase *Con Lugar* la demanda; ordenase la ejecución y venta pública de la propiedad y, ordenase la cancelación de todos los créditos o cargos conforme a derecho.

Tras varios trámites procesales, el 10 de enero de 2025, la parte apelante compareció mediante *Oposición a Moción de Sentencia Sumaria*.[8] Reiteró que, debido a la existencia del pleito civil en el caso

---

[4] SUMAC TPI, a la Entrada Núm. 50.
[5] SUMAC TPI, a la Entrada Núm. 57.
[6] SUMAC TPI, a la Entrada Núm. 82.
[7] SUMAC TPI, a la Entrada Núm. 83.
[8] SUMAC TPI, a la Entrada Núm. 122.

KCD2015-0077, donde el Banco Popular levantó un reclamo sobre la existencia de un gravamen preferente sobre la propiedad en controversia, la moción de sentencia sumaria era una prematura. Sostuvo que los procedimientos debían paralizarse en tanto se dilucidaba el pleito pendiente.

Por consiguiente, el 30 de abril de 2025 con notificación el 6 de mayo de 2025, el Tribunal de Primera Instancia emitió *Sentencia Parcial*.[9] Mediante el referido dictamen, el foro primario concluyó que el matrimonio Arrue-León incumplió los términos y condiciones de la hipoteca revertida al transferir su título y dominio a Olympus. En virtud de lo anterior, dictó sentencia en rebeldía y declaró *Ha Lugar* la demanda. Asimismo, dispuso que ante la eventualidad de que el matrimonio no hiciera efectivo el pago de las sumas adeudadas dentro del término establecido por ley, se ordenaría la venta en pública subasta de la propiedad hipotecada.

Inconforme, el 20 de mayo de 2025, Olympus presentó una *Moción de Reconsideración*.[10] Sostuvo que existía un pleito paralelo en el cual se discutía la validez y prelación de los gravámenes sobre la propiedad en controversia anteriormente. Arguyó que el resultado de dicho litigio podía invalidar la hipoteca de FAR, si la hipoteca del Banco Popular era validada como una preferente. Planteó que la hipoteca cuya ejecución se pretendía ejecutar, había sido constituida sin probarse que la misma cumpliera con los requisitos esenciales del reglamento federal aplicable. A tenor, solicitó al foro primario que reconsiderase la sentencia parcial. Asimismo, solicitó que se suspendiera el procedimiento de ejecución de hipoteca hasta que se completase el proceso de descubrimiento de prueba solicitado y se dilucidase la validez del gravamen.

En respuesta, el 9 de junio de 2025, FAR instó *Oposición a "Solicitud de Reconsideración"*.[11] Arguyó que el incumplimiento con los requisitos reglamentarios del Housing and Urban Development (HUD) no confería

---

[9] SUMAC TPI, a la Entrada Núm. 132.
[10] SUMAC TPI, a la Entrada Núm. 134.
[11] SUMAC TPI, a la Entrada Núm. 141.

derecho alguno a terceros no signatarios del préstamo asegurado. Sostuvo que la parte apelante, como tercero adquirente de la propiedad y parte no signataria del contrato hipotecario, carecía de legitimación activa para invocar el incumplimiento de los requisitos del programa federal. Expuso que Olympus fue incluido en la reclamación por constar como titular inscrito en el registro. A tenor, solicitó que se declarase *No Ha Lugar* la reconsideración solicitada y, por consiguiente, se ordenase la ejecución de la hipoteca.

Conforme lo anterior, el 8 de agosto de 2025, el foro primario emitió una *Resolución*[12] mediante la cual declaró *No Ha Lugar* la reconsideración solicitada por la parte apelante. Posteriormente, el 14 de agosto de 2025, notificada el 18 de agosto de 2025, el Tribunal de Primera Instancia emitió una *Sentencia* (*Enmendada Nunc Pro Tunc).*[13] Mediante su dictamen, el foro primario determinó que, a pesar de la existencia de un pleito iniciado por el Banco Popular, este no se opuso a la solicitud de sentencia sumaria. Concluyó que, dado el incumplimiento irrefutado e incontrovertido del matrimonio Arrue-León, procedía declarar *Con Lugar* la demanda de título. Además, modificó las cantidades adeudadas y dispuso que se adeudaba la suma principal de trescientos sesenta y cinco mil seiscientos cuarenta y dos dólares y veintitrés centavos ($365,642.23); los intereses sobre dicha suma al 5.060%; la suma estipulada de noventa y tres mil ochocientos veinticinco dólares ($93,825.00) por concepto de gastos, costas y honorarios de abogado y, una suma adelantada por FAR por concepto de contribuciones sobre la propiedad, primas de seguro, tasaciones, inspecciones y otros gastos asociados con la protección de su interés o pagos en tal concepto.

Inconforme, el 25 de agosto de 2025, el apelante compareció mediante *Solicitud de Reconsideración en Torno a Sentencia Sumaria, Luego Enmendada Nunc Pro Tunc.*[14] Adujo que la parte apelada no había

---

[12] SUMAC TPI, a la Entrada Núm. 147.
[13] SUMAC TPI, a la Entrada Núm. 154.
[14] SUMAC TPI, a la Entrada Núm. 156.

producido prueba alguna que demostrase que el gravamen hipotecario fuese constituido conforme a derecho. A tenor, solicitó al foro primario que reconsiderase su determinación.

Por su parte, el 25 de septiembre de 2025, el apelado presentó *Oposición a "Solicitud de Reconsideración" SUMAC #156*.[15] Asimismo, el 25 de septiembre de 2025, el Banco Popular instó *Moción en Cumplimiento de Orden sobre Moción de Reconsideración Presentada por Olympus Investment Corporation.*[16] El 26 de septiembre de 2025, Olympus compareció nuevamente mediante *Réplica a "Oposición a "Solicitud de Reconsideración" SUMAC #156".*[17] Consecuentemente, mediante *Resolución*[18] emitida el 4 de noviembre de 2025, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración presentada por el apelante.

Aún inconforme, el 4 de diciembre de 2025, comparece el apelante ante nos mediante *Apelación*,[19] y nos señala la comisión de un error por parte del foro primario, como sigue:

> Erró el Tribunal de Primera Instancia al dictar sentencia sumaria y autorizar la ejecución hipotecaria sin resolver la controversia medular sobre la validez e inscripción legal del gravamen frente al dominio de Olympus, y sin permitir la culminación del descubrimiento de prueba dirigido precisamente a ese punto, a pesar de que Olympus posee legitimación activa para impugnar una inscripción hipotecaria que afecta directamente su título.

El 11 de diciembre de 2025, emitimos *Resolución*[20] en la cual se concedió a la parte apelada hasta el 20 de enero de 2026 para presentar su alegato. Compareció el apelado, el 29 de diciembre de 2025, mediante *Moción de Desestimación.*[21] Por su parte, el 8 de enero de 2026, compareció el Olympus mediante *Oposición a Moción de Desestimación.*[22] De igual forma, el 20 de enero de 2026, compareció la parte apelada

---

[15] SUMAC TPI, a la Entrada Núm. 169.
[16] SUMAC TPI, a la Entrada Núm. 170.
[17] SUMAC TPI, a la Entrada Núm. 171.
[18] SUMAC TPI, a la Entrada Núm. 178.
[19] Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1.
[20] SUMAC TA, a la Entrada Núm. 3.
[21] SUMAC TA, a la Entrada Núm. 4.
[22] SUMAC TA, a la Entrada Núm. 6.

mediante *Alegato de la Parte Apelada*.[23] Contando con la comparecencia de las partes, procedemos a resolver.

## II

### A. Sentencia Sumaria

Nuestro ordenamiento jurídico define los parámetros de la sentencia sumaria bajo la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V., R. 36. La sentencia sumaria es aquel mecanismo que "posibilita una disposición ágil de casos sin la celebración de un juicio, siempre que no presenten controversias genuinas de hechos materiales". *Birriel Colón v. Econo y Otros*, 213 DPR 80, 90 (2023). Conforme la letra de la Regla 36. 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, para poder adjudicar en sus méritos una moción de sentencia sumaria a favor del reclamante, lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente", ya sea sobre la totalidad de la reclamación o parte de esta. En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Conforme lo anterior, la sentencia sumaria solo debe dictarse en casos claros. Si no existe certeza sobre todos los hechos materiales en la controversia, no procede que se dicte sentencia sumaria. Sin embargo, se ha establecido que la sentencia sumaria, "[p]rocede, aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el promovente logre demostrar preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares". *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2001).

---

[23] SUMAC TA, a la Entrada Núm. 7.

Ante esta situación, la parte promovida debe "defenderse de la misma forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible". *Id.*

Asimismo, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. Sobre los requisitos a cumplir por la parte promovente, la Regla 36.3 en su inciso (a) de Procedimiento Civil, *supra,* establece lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable;
(6) el remedio que debe ser concedido.

Si el promovente incumple con los requisitos de forma, "el tribunal no estará obligado a considerar su pedido". *Meléndez González v. M. Cuebas*, *supra*, pág. 111. Del mismo modo, si el promovido es quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

Por otro lado, la Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.6, establece el procedimiento a seguir cuando no es posible conseguir declaraciones juradas, en específico la regla versa de la siguiente manera:

Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración, concediéndole a la parte promovida un término razonable para que pueda obtener las declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia o dictar cualquier otra orden que sea justa.

En fin, toda vez que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González v. M. Cuebas, supra*, págs. 109-110, que cita a: *Const. José Carro v. Mun. de Dorado*, 186 DPR 113 (2012).

Según se ha reiterado jurisprudencialmente, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. in embargo, al revisar la determinación del tribunal primario, estamos limitados a: (1) considerar solamente los documentos que se presentaron ante el foro de primera instancia; y (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. Esto es, estamos impedidos de adjudicar los hechos materiales esenciales en disputa. *Birriel Colón v. Econo y Otros*, supra, pág. 91; *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la *Moción de Sentencia Sumaria* en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González v. M. Cuebas*,

*supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, revisaremos que la moción de sentencia sumaria y su oposición, cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos. *Id.*

**B. Hipoteca**

La hipoteca es un derecho real de garantía que sujeta lo hipotecado, con independencia de su titular, a la facultad de eventualmente exigir su realización en valor, así como de tomar las medidas que resulten necesarias para salvaguardarlo, todo en aras de hacer valer la efectividad de una obligación dineraria principal. *R&G v. Registradora*, 162 DPR 602, 607 (2004). El derecho de hipoteca es de carácter accesorio, indivisible, de constitución registral y grava bienes inmuebles enajenables que permanecen en posesión de su propietario o titular. *Dist. Unidos Gas. v. Sucn. Declet Jiménez,* 196 DPR 96 (2016); *Soto Solá v. Registradora*, 189 DPR 653 (2013).

El Artículo 1014 del Código Civil de Puerto Rico, 31 LPRA sec. 8734, requiere que, como condición para la validez de la hipoteca, la misma debe constar inscrita en el Registro de la Propiedad. *Crespo Rodríguez v. González González,* 208 DPR 557, 574(2022); *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 341-342 (2019); *Dist. Unidos Gas v. Sucn. Declet Jiménez*, *supra*, págs. 110-111. Una vez la hipoteca queda inscrita, esta subsiste respecto a tercero, mientras no se cancele la inscripción en el Registro. Ley Núm. 210-2015, según enmendada,

conocida como *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6120 (Ley del Registro de la Propiedad). Así, pues, toda hipoteca que esté debidamente constituida permite a su titular a perseguir el bien hipotecado hasta que se produzca su liquidación en caso de incumplirse la obligación que garantiza. Lo anterior opera con independencia de quién sea el propietario del bien, puesto que, al ser un derecho real oponible a terceros, la transmisión posterior del título de la cosa no afecta los derechos del acreedor. *Campos del Toro v. Ame. Transit Corp.*, 113 DPR 337 (1982).

De otro lado, una de las formas en que el acreedor hipotecario puede hacer valer su crédito es mediante un procedimiento ordinario de ejecución de hipoteca. En lo concerniente, respecto al antes mencionado procedimiento, el trámite exige que se demande al titular inscrito del inmueble gravado. *Housing Inv. Corp. v. Registrador,* 110 DPR 490 (1980); Ley del Registro de la Propiedad, *supra*, sec. 6133. Por titular registral o inscrito se entiende a "aquella persona a quien pertenece el derecho sobre el inmueble según el Registro de la Propiedad". *Pagán Rodríguez v. Registradora*, 177 DPR 522, 543 (2009). A tenor con ello, para identificar el titular registral del inmueble en litigio, el acreedor hipotecario debe investigar los datos registrales para así comenzar su ejecutoria. *Housing Inv. Corp. v. Registrador*, *supra*.

### C. Ejecución de Hipoteca

En nuestro ordenamiento jurídico se reconocen tres vías procesales distintas mediante las cuales un acreedor hipotecario puede hacer efectivo su crédito y ejecutar su derecho real. *Atancia Corp. v. J.M. Saldaña, Inc.*, 133 DPR 284, 292 (1993). Entre estas, se encuentra el procedimiento de ejecución de hipoteca por la vía ordinaria. *Id.* El Tribunal Supremo ha expresado que la acción de ejecución de hipoteca por la vía ordinaria es de naturaleza mixta, es decir, es una acción personal y real al mismo tiempo. *First Fed. Savs. v. Nazario et als.*, 138 DPR 872, 879 (1995). Mediante la vía ordinaria, el acreedor puede optar en obtener la satisfacción de su

sentencia, que reconoce su crédito hipotecario, mediante el requerimiento de pago personal al deudor o mediante la ejecución de la garantía hipotecaria. *Id.*, pág. 880. Este procedimiento es el más utilizado porque permite acumular la acción real y la personal, de modo que, si la deuda resulta ser por una cantidad mayor a la que está garantizada por hipoteca, el acreedor puede optar en intentar cobrar el exceso persiguiendo el patrimonio del deudor. J.L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra ed. rev., San Juan, Puerto Rico, Jurídica Editores, 2012, pág. 597 citando a *Campos v. Cía. Fom. Ind.*, 153 DPR 137 (2001).

Por otro lado, la Ley del Registro de la Propiedad Inmobiliaria, *supra*, en su sec. 6131, regula en parte el procedimiento de ejecución de hipoteca. En su Artículo 94 establece, entre otras cosas, que una hipoteca vencida en todo o en parte, o sus intereses, puede ser ejecutada por vía judicial. Del mismo modo, la Regla 51.3 (b) de Procedimiento Civil, 32 LPRA Ap. V., R. 51.3, establece el procedimiento a seguir en la ejecución de hipoteca por la vía ordinaria. Respecto al mismo establece lo siguiente:

> Toda sentencia dictada en pleitos sobre ejecución de hipoteca y otros gravámenes ordenará que la parte demandante recupere su crédito, intereses y costas mediante la venta de la finca sujeta al gravamen. Al efecto, se expedirá un mandamiento al alguacil o a la alguacila, para que lo entregue a la parte interesada, en el que se disponga que proceda a venderla para satisfacer la sentencia en la forma prescrita por la ley para la venta de propiedad bajo ejecución. Si no se encuentra la finca hipotecada o si el resultado de su venta resulta insuficiente para satisfacer la totalidad de la sentencia, el alguacil o la alguacila procederá a recuperar el resto del dinero o el remanente del importe de la sentencia de cualquiera otra propiedad de la parte demandada, como en el caso de cualquiera otra ejecución ordinaria.

El Tribunal Supremo ha expresado que las hipotecas presuponen la existencia de una obligación por la cual el deudor hipotecario respondería con todos sus bienes presentes y futuros. *Romero v. S.L.G. Reyes*, 164 DPR 721, 737 (2005). Por lo que el acreedor hipotecario tiene derecho de hacer valer su crédito hipotecario contra "todo el patrimonio del deudor y, además, posee un derecho real sobre un bien determinado que responde de la deuda[,] aunque haya pasado a manos de un tercero". *Id.*

### D.  Préstamo Hipotecario Revertido

El préstamo hipotecario revertido ("reverse") o "Home Equity Conversion Mortgage" (HECM), está asegurado a través de un programa del Departamento de Vivienda y Desarrollo Urbano del gobierno federal (HUD). 12 USC sec. 1715z–20 (Ley orgánica), 24 CFR sec. 206.1 *et seq.* (Reglamento). Este tipo de programa no provee una hipoteca directamente, sino que sirve como garantizador a acreedores quienes proveen préstamos descansando en las ganancias (equity) generadas por la propiedad a prestatarios sobre la edad de setenta y dos (62) años. 12 USC sec. 1715z–20(b)(1); 24 CFR sec. 206.33. El programa está diseñado para hacer este tipo de préstamos más accesible a personas de esta edad, protegiendo a su vez al prestamista del riesgo que representa la transacción. 12 USC sec. 1715z–20(a). Se trata de un producto complejo y altamente regulado por el gobierno federal.

Ahora bien, en el ámbito federal, se ha establecido que los reglamentos del HUD no están diseñados para ser invocados por los deudores hipotecarios en pleitos contra los acreedores. *Garey v. BWW Law Group, LLC*, Case No. 8:19-cv-03112-PWG (Md. 2021). Asimismo, en cuanto a las regulaciones del programa de seguro de la FHA, se ha dispuesto lo siguiente:

> "[T]he regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee." *Garey v. BWW Law Group, LLC*, Case No. 8:19-cv-03112-PWG (Md. 2021).

Las regulaciones de HUD están dirigidas principalmente a regir la relación entre el prestamista de hipotecas inversas y HUD. Por ende, las regulaciones de HUD no otorgan al prestatario un derecho privado de acción, a menos que las regulaciones estén expresamente incorporadas en el acuerdo entre el prestamista y el prestatario. *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192**,** 196 (Jul 18, 2016). Véase, además, *Smith v. JPMorgan Chase Bank*, N.A., 519 Fed.Appx. 861, 864 (5th Cir. 2013).

**III**

En el caso de marras, comparece Olympus Investment Corporation y nos solicita la revisión de una sentencia del Tribunal de Primera Instancia. En su petitorio, la parte apelante nos plantea que incidió el foro primario al dictar sentencia sumaria y autorizar la ejecución hipotecaria sin resolver una controversia sobre la validez e inscripción legal del gravamen frente al dominio de Olympus, y sin permitir la culminación del descubrimiento de prueba, a pesar de que el apelante posee legitimación activa para impugnar una inscripción hipotecaria que afecta directamente su título. Resolvemos.

Como es sabido, procede un dictamen de sentencia sumaria, aunque se hayan alegado hechos que aparenten estar en controversia, cuando el promovente logra demostrar preponderantemente, y mediante prueba documental que no existe controversia sobre los hechos medulares". *Jusino et als. v. Walgreens, supra.* Asimismo, procede que se dicte sentencia sumaria cuando el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Meléndez González v. M. Cuebas*, *supra.* De una revisión *de novo* y un examen del expediente de la manera más favorable para la parte apelante, surge claramente que la solicitud de sentencia sumaria presentada por FAR cumplió cabalmente con los requisitos recopilados en la Regla 36 de Procedimiento Civil, *supra*. Los hechos y la prueba ofrecida por la parte apelada no fueron debidamente controvertidos por las alegaciones contenidas en la oposición a la sentencia sumaria, ni por la prueba ofrecida por Olympus. Dado lo anterior, nos corresponde revisar de *novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos.

La controversia medular en la demanda de título gira en torno al incumplimiento del matrimonio Arrue-León con sus obligaciones contractuales, según pactadas en el pagaré y la escritura de hipoteca que fueron suscritos entre estos y FAR. Conocido es que, una inscripción hipotecaria constituye un derecho real con trascendencia registral que

afecta a terceros desde el momento mismo de su inscripción. Dicho lo anterior, es importante resaltar que Olympus no fue parte contratante en el préstamo concedido entre las partes, ni en la constitución de la garantía hipotecaria en cuestión. Por tanto, como tercero adquiriente y parte no signataria, Olympus carece de legitimación.

Ahora bien, contrario a lo alegado por el apelante, la hipoteca es válida y ejecutable, toda vez que consta inscrita en el registro. El apelante adquirió la titularidad de la propiedad en controversia con conocimiento registral de la existencia de la hipoteca revertida a favor de la parte apelada. Por tanto, quedó sujeto a los gravámenes previamente inscritos. Además, la adquisición de dicha titularidad, en sí, constituye prueba del incumplimiento del matrimonio Arrue-León con los términos contractuales según pactados. En consecuencia, FAR como acreedor hipotecario tiene derecho a reclamar las cantidades adeudadas por estos y exigir la ejecución de hipoteca.

Por todo lo anterior, es forzoso concluir que los argumentos del apelante carecen de méritos. No habiéndose cometido el error señalado por el apelante, procedemos a *confirmar* el dictamen apelado.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones